[No. H022919. Sixth Dist. Dec. 21, 2001.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent;
MICHAEL THOMAS CHEEK, Real Party in Interest.

[No. H022885. Sixth Dist. Dec. 21, 2001.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent;
GREGORY GRANT, Real Party in Interest.

**COUNSEL**

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Rene A. Chacon, Bridget Billeter and Moona Nandi, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Kristine M. Burk, William Weigel and Lisa McCamey for Real Parties in Interest Michael Thomas Cheek and Gregory Grant.

OPINION

BAMATTRE-MANOUKIAN, Acting P. J.—

## I. INTRODUCTION

The People petition for extraordinary relief from the orders of respondent court denying the People's motions to quash the notices of deposition issued by real parties in interest Michael Thomas Cheek (Cheek) and Gregory Grant (Grant). The trial court's orders allow the depositions of several Atascadero State Hospital physicians and psychologists to be taken pursuant to subpoena in proceedings to commit Cheek and Grant under the Sexually Violent Predators Act (SVPA), Welfare and Institutions Code section 6600 et seq. We granted writ review to answer a question of first impression: whether the right to civil discovery in SVPA proceedings includes the right to notice depositions. We determine that the Civil Discovery Act of 1986 (Code Civ. Proc., § 2016 et seq. (Civil Discovery Act))[1] applies in SVPA proceedings and therefore the deposition method of discovery is available.

We further conclude that the right to discovery in SVPA proceedings is subject to certain provisions of the Civil Discovery Act that expressly authorize the trial court to manage discovery and to prevent misuse of discovery procedures. Finally, we conclude that the scope of discovery in SVPA proceedings is circumscribed by the two narrow issues presented at trial: (1) whether the person sought to be committed "has been convicted of a sexually violent offense against two or more victims" (Welf. & Inst. Code, § 6600, subd. (a)(1)); and (2) whether the person "has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Welf. & Inst. Code, § 6600, subd. (a)(1).)

On the basis of these conclusions, we will issue writs of mandate vacating the orders denying the People's motions, and return these matters to the trial court with directions to reconsider its rulings in accordance with those provisions of the Civil Discovery Act that authorize a trial court to exercise its discretion to manage civil discovery.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The People filed writ petitions challenging the trial court's orders denying the People's motions to quash notices of deposition issued in the SVPA

---

[1]All statutory references hereafter are to the Code of Civil Procedure unless otherwise indicated.

commitment proceedings pertaining to Grant (*People v. Grant*, case No. ME-31) and to Cheek (*People v. Cheek*, case No. ME-30). Since the two writ petitions raise the same discovery issue, we ordered that these original proceedings be considered together for purposes of an order to show cause, briefing, oral argument and decision. We also stayed all trial court proceedings while our writ review was pending. A brief summary of the factual and procedural background of each original proceeding follows.

## A. *People v. Cheek*

On March 20, 2001, the People filed a petition for recommitment of Cheek to the California State Department of Mental Health (DMH) as a sexually violent predator (SVP) pursuant to Welfare and Institutions Code section 6600 et seq. The petition alleges that Cheek has five convictions for sexually violent offenses involving two or more victims, that Cheek was found to be an SVP in 1998 and was committed to the DMH for two years, and that Cheek was recently evaluated by two psychologists or psychiatrists for the purpose of determining whether he should be recommitted.[2]

The People's petition is supported by a letter to the District Attorney of Santa Cruz County from Robert S. Knapp, M.D., Medical Director, Atascadero State Hospital. In the letter, Dr. Knapp advises that the DMH recommends that a petition for extension of commitment be filed, because "[s]tate hospital treatment staff believe that this patient is a person who continues to meet all the legal and clinical criteria which led to the original civil commitment and therefore qualifies for extension of commitment under [the] provisions of Welfare and Institutions Code section 6604." Also attached to the petition are the SVP recommitment evaluations of two clinical psychologists, Dawn Starr, Ph.D. and Todd Thies, Ph.D. Dr. Starr concluded that Cheek "is likely to commit future sexually violent predatory criminal acts without appropriate treatment and custody." Dr. Thies's evaluation states that "as a result of his diagnosed mental disorder Mr. Cheek is likely to engage in sexually violent criminal behavior in the future."

While the March 2001 recommitment petition was pending, Cheek's attorney issued deposition subpoenas which noticed three individuals to appear for oral depositions, including Dr. Diane Imrem and Dr. Gabrielle Palladino of Atascadero State Hospital and Dr. Dale Arnold of Pismo Beach, California. The deponents are identified in the current SVP recommitment

---

[2]Cheek's conviction record and the history of his previous SVPA proceedings are more fully set forth in this court's decisions in *Butler v. Superior Court* (2000) 78 Cal.App.4th 1171 [93 Cal.Rptr.2d 468] and *People v. Superior Court (Butler)* (2000) 83 Cal.App.4th 951 [100 Cal.Rptr.2d 199].

evaluations as having submitted reports in connection with Cheek's previous SVP commitment. Dr. Imrem prepared a "psychological intake/transfer summary" dated August 22, 1997. Dr. Palladino, a staff psychiatrist, prepared an "annual WIC 6604 report" dated June 5, 1998. Dr. Arnold is a clinical psychologist who wrote a "6600 evaluation" dated April 19, 1999.

The People responded to the deposition subpoenas by filing a motion to quash the deposition notices on grounds that civil discovery is not permitted in SVPA proceedings because such proceedings are quasi-criminal, and civil discovery would frustrate the proceedings by causing unnecessary delay and expense. Further, the People asserted that the appellate court had erred in ruling to the contrary in *Leake v. Superior Court* (2001) 87 Cal.App.4th 675 [104 Cal.Rptr.2d 767] (*Leake*). The People later filed supplemental points and authorities contending that *Leake* was not final and binding authority because the People's petition for review was pending in the California Supreme Court.

Cheek filed opposition to the motion to quash the deposition notices, arguing that *Leake* nevertheless constituted binding authority which authorized civil discovery in SVPA proceedings. Cheek also pointed to the California Supreme Court's decision in *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584], which established that SVPA proceedings are civil in nature. Finally, Cheek contended that the People did not have standing to move to quash the depositions of employees of Atascadero State Hospital.

At the time of the hearing on the motion to quash, the trial court denied the People's motion on the sole ground that it was compelled to follow the decision in *Leake* that civil discovery is permitted in SVPA proceedings. At no time in the law and motion proceeding were any issues raised as to the propriety of the depositions, beyond the issue of whether civil discovery is authorized in SVPA proceedings.

B. *People v. Grant*

On July 13, 2000, the People filed a petition for recommitment of Grant as a sexually violent offender pursuant to Welfare and Institutions Code section 6600 et seq. The People allege that Grant has seven convictions for sexually violent offenses involving two or more victims, which qualify him for commitment under the SVPA. Further, the People assert that recommitment of Grant is justified because the DMH has determined that "this patient is a person who continues to meet all the legal and clinical criteria which led to the original civil commitment," as set forth in Dr. Knapp's letter of June 28, 2000.

The petition is further supported by the recommitment evaluations of two clinical psychologists, Diane Imrem, Psy.D. and William R. Knowlton, Ph.D. Both Dr. Imrem and Dr. Knowlton evaluated Grant at the conclusion of his initial two-year SVPA commitment. Dr. Imrem reported that Grant currently meets the statutory definition of an SVP because he is "likely to engage in sexually violent criminal behavior in the future." Similarly, Dr. Knowlton opined that Grant is likely "to engage in sexually violent, predatory, criminal behavior in the future" as a result of diagnosed mental disorders.

During the course of recommitment proceedings, Grant's attorney caused deposition subpoenas to issue which noticed the depositions of seven Atascadero State Hospital psychologists and physicians, identified in the subpoenas as Dr. Diane Imrem, Dr. Mary Flavin, Dr. Robert Knapp, Dr. William Knowlton, Dr. Gabrielle Palladino, Dr. Jay Seastrunck, and Dr. Edward Cavanaugh. As noted above, Dr. Imrem and Dr. Knowlton are both connected to Grant's case as the authors of the current recommitment evaluations. Dr. Palladino is identified in Dr. Imrem's evaluation as having prepared an "Annual Report to Court" dated February 8, 2000. Dr. Knapp is the Medical Director of Atascadero State Hospital. The record is unclear, however, as to the connection of the other deponents (Drs. Flavin, Seastrunck and Cavanaugh) to Grant's SVP recommitment proceedings.

After the deposition subpoenas were served, the People brought a motion for an order quashing notice of deposition. The People again argued that the depositions could not be taken because the Civil Discovery Act does not apply to SVPA proceedings. While the People acknowledged that the appellate court had ruled to the contrary in Leake, they advised the trial court that the Leake decision need not be followed because it was not final. Further, the People challenged the reasoning of the Leake decision, asserting that the Legislature did not intend civil discovery to apply in quasi-criminal proceedings, such as SVPA proceedings, because civil discovery would cause the proceedings to be unnecessarily delayed.

Grant filed opposition to the motion to quash. Like Cheek, he argued that the ruling in Leake was binding upon the trial court despite the People's pending petition for review. Further, Grant asserted that Leake was correctly decided because the Civil Discovery Act applies to all civil proceedings, including SVPA proceedings, and because the SVPA does not prohibit civil discovery.

At the hearing on the People's motion to quash, the primary issue was whether the decision in Leake was final in light of the People's petition for

review. Ultimately, the trial court concluded that it was compelled to follow *Leake*'s ruling that civil discovery applies in SVPA proceedings, although it did not agree with the decision. Therefore, the court denied the People's motion to quash. Again, no issues were raised concerning the merits of the motion to quash or the propriety of the seven depositions, other than to question the application of the Civil Discovery Act in SVPA proceedings.

## III. DISCUSSION

### A. *Availability of Writ Relief and the Standard of Review*

■ Writ review is appropriate in discovery matters where, as here, it is necessary to address "questions of first impression that are of general importance to the trial courts and to the [legal] profession, and where general guidelines can be laid down for future cases." (*Oceanside Union School Dist. v. Superior Court* (1962) 58 Cal.2d 180, 185-186, fn.4 [23 Cal.Rptr. 375, 373 P.2d 439].) ■ The standard of review for a discovery order is abuse of discretion, because management of discovery lies within the sound discretion of the trial court. (*Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 380 [15 Cal.Rptr. 90, 364 P.2d 266].) Thus, where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court. (*Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1061 [95 Cal.Rptr.2d 864].)

■ In the present cases, we conclude that the trial court did not exercise its discretion to manage discovery when the trial court denied the People's motions for an order quashing notices of deposition and permitted 10 depositions to go forward on the sole ground that civil discovery is authorized in SVPA proceedings. As discussed below, while we agree that the Civil Discovery Act, section 2016 et seq., applies in SVPA proceedings, we further conclude that the right to discovery in SVPA proceedings is subject to those provisions of the Civil Discovery Act that expressly authorize the trial court to manage discovery and to prevent misuse of discovery procedures.

### B. *The Civil Discovery Act Is Applicable in SVPA Proceedings*

The SVPA is silent with regard to discovery rights, stating only that "access to all relevant medical and psychological records and reports" is mandatory. (Welf. & Inst. Code, § 6603, subd. (a).) The People concede that this statutory provision does not limit defendant's right to discovery in SVPA proceedings. In *Leake*, our colleagues at the Third Appellate District concluded that the Civil Discovery Act applies to SVPA commitment proceedings. The California Supreme Court denied review of *Leake* on May 23,

2001. We agree with the conclusion in *Leake* that civil discovery applies in SVPA proceedings.

■ The SVPA establishes a "civil commitment scheme covering persons who are to be viewed, 'not as criminals, but as sick persons.' " (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1166 [81 Cal.Rptr.2d 492, 969 P.2d 584].) Thus, an SVPA proceeding is civil in nature. (*Sporich v. Superior Court* (2000) 77 Cal.App.4th 422, 427 [91 Cal.Rptr.2d 752]; *Griego v. Superior Court* (2000) 80 Cal.App.4th 568, 577 [95 Cal.Rptr.2d 351].) The Civil Discovery Act applies in both "a civil action and a special proceeding of a civil nature." (§ 2016, subd. (b)(1).) ■ A special proceeding of a civil nature is "[a] type of case which was not, under the common law or equity practice, either an action at law or a suit in equity." (*Oak Grove School Dist. v. City Title Ins. Co.* (1963) 217 Cal.App.2d 678, 710 [32 Cal.Rptr. 288]; see also *Avelar v. Superior Court* (1992) 7 Cal.App.4th 1270, 1275 [9 Cal.Rptr.2d 536].) "A special proceeding has reference only to such proceedings as may be commenced independently of a pending action by petition or motion upon notice in order to obtain special relief." (*Oak Grove School Dist. v. City Title Ins. Co., supra,* 217 Cal.App.2d at p. 710.)

The California Supreme Court has stated that a proceeding under Welfare and Institutions Code section 1800, in which the California Youth Authority petitions the court to retain a physically dangerous ward beyond his or her release date in order to provide treatment for the cause of the dangerousness, has a "demonstrably civil purpose" and hence is a special proceeding of a civil nature. (*In re Gary W.* (1971) 5 Cal.3d 296, 302, 309 [96 Cal.Rptr. 1, 486 P.2d 1201].) ■ Similarly, an SVPA commitment proceeding is a special proceeding of a civil nature, because it is neither an action at law nor a suit in equity, but instead is a civil commitment proceeding commenced by petition independently of a pending action. As in other special proceedings of a civil nature, the Civil Discovery Act is applicable. (§ 2016, subd. (b)(1); *Hung v. Wang* (1992) 8 Cal.App.4th 908, 924 [11 Cal.Rptr.2d 113] [a Civ. Code, § 1714.10 hearing is a special proceeding within the Civil Discovery Act]; *Coberly v. Superior Court* (1965) 231 Cal.App.2d 685, 690 [42 Cal.Rptr. 64] [a probate matter is a special proceeding of a civil nature to which civil discovery applies].)

C. *The Civil Discovery Act's Provisions for Management of Discovery Apply in SVPA Proceedings*

While the Civil Discovery Act is applicable in SVPA proceedings, the right to civil discovery in special proceedings of a civil nature remains subject to the trial court's authority to manage discovery. (See *Coberly v.*

*Superior Court, supra,* 231 Cal.App.2d at p. 691.) For the guidance of parties and trial courts involved in SVPA proceedings, we will review the statutory provisions for the management of civil discovery which are expressly included in the Civil Discovery Act and which apply in all civil proceedings of a special nature, including SVPA proceedings. The issue of the trial court's authority to manage civil discovery in SVPA proceedings is likely to recur and to have a significant effect on SVPA litigation throughout the state. In the present case, the depositions noticed by Cheek and Grant illustrate the impact of civil discovery in SVPA proceedings, such as the burden on the DMH in making its psychologists and psychiatrists available for deposition in SVPA proceedings, and the burden on the trial courts caused by the addition of discovery disputes to SVPA proceedings.

The general scope of discovery is set forth in section 2017, subdivision (a), which provides that "[u]nless otherwise limited by order of the court . . . any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved . . . the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence."[3] Thus, "[f]or discovery purposes, information should be regarded as 'relevant to the subject matter' if it might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement thereof." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2001) ¶ 8:66, p. 8C-1, italics omitted; *Gonzalez v. Superior Court* (1995) 33 Cal.App.4th 1539, 1546 [39 Cal.Rptr.2d 896].)

In SVPA proceedings, the primary purpose of discovery most likely will be to assist the parties in preparing for trial, and, to a lesser extent, to assist the parties in case evaluation and settlement. These purposes are served in SVPA proceedings when the information sought by civil discovery methods is relevant to the two narrow issues presented at trial: (1) whether the person sought to be committed "has been convicted of a sexually violent offense against two or more victims" (Welf. & Inst. Code, § 6600, subd. (a)(1)); and (2) whether the person "has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Welf. & Inst.

---

[3]Section 2017, subdivision (a), provides that: "Unless otherwise limited by order of the court in accordance with this article, any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence. Discovery may relate to the claim or defense of the party seeking discovery or of any other party to the action. Discovery may be obtained of the identity and location of persons having knowledge of any discoverable matter, as well as of the existence, description, nature, custody, condition, and location of any document, tangible thing, or land or other property."

Code, § 6600, subd. (a)(1).) Thus, information relating to the proof of these issues is within the permissible scope of discovery in SVPA proceedings.

Review of the discovery permitted in other civil commitment proceedings is instructive in determining the permissible scope of discovery in SVPA proceedings. Another statutory scheme which, like the SVPA, is silent with regard to discovery, is the statutory scheme for civil commitment of a mentally disordered ward after completion of a California Youth Authority term. (Welf. & Inst. Code, § 1800 et seq.) The California Supreme Court addressed the issue of the right to discovery in Welfare and Institutions Code section 1800 commitment proceedings in its 1971 decision, *In re Gary W.*, *supra*, 5 Cal.3d 296 (*Gary W.*).

The court concluded in *Gary W.* that a Youth Authority ward has a right to discovery, as follows: "although section 1800 proceedings are not juvenile proceedings, and are not criminal, the same discovery rights should be available to adults subject to commitment as are extended to juveniles and to defendants in criminal prosecutions. *In adult commitment proceedings, however, the court also has discretion to authorize, upon a showing of relevance and necessity, any of the discovery tools available in a civil action.*" (*Gary W.*, *supra*, 5 Cal.3d at p. 309, italics added.)

Thus, the California Supreme Court ruled in *Gary W.* that civil discovery is available in a Welfare and Institutions Code section 1800 proceeding but that the right to discovery is limited. The court saw "no necessity to accord full discovery rights afforded in civil actions to all defendants in commitment proceedings. . . . The narrow issue and the need for expeditious adjudication suggest that it is not unreasonable to require a showing of relevance and necessity as a prerequisite to a discovery order." (*Gary W.*, *supra*, 5 Cal.3d at p. 310.) By requiring a court order for discovery, the California Supreme Court placed a burden on the proponent of discovery in a Welfare and Institutions Code section 1800 proceeding to show good cause *before* discovery is propounded.

However, the court's reasoning in *Gary W.* was based upon the language of former section 2035, which expressly provided that civil discovery was allowed in special proceedings of a civil nature only where "it is necessary to do so." This language in former section 2035, indicating that a showing of necessity was required for civil discovery in special proceedings, was not carried over when the Civil Discovery Act was enacted. (Stats. 1986, ch. 1334, § 2, p. 4700, as amended by Stats. 1987, ch. 86, § 1.8, p. 299; *Leake*, *supra*, 87 Cal.App.4th at p. 682.) The decision in *Gary W.* is instructive nevertheless because it indicates that the "narrow issue and the need for expeditious adjudication" are legitimate considerations in determining the

permissible scope of civil discovery in similar civil commitment proceedings, including proceedings under the SVPA. (*Gary W., supra,* 5 Cal.3d 296, 310.)

Accordingly, in managing discovery in SVPA proceedings, the trial court must keep in mind both the narrow scope of permissible discovery and the need for expeditious adjudication. The Civil Discovery Act provides the trial court with the authority and the procedures for management of discovery, so that discovery can serve its purpose in SVPA proceedings. Recognizing that discovery procedures are subject to misuse, the Civil Discovery Act authorizes the trial court to limit discovery where appropriate. (§§ 2019,[4] 2023.[5])

---

[4]Section 2019 provides: "(a) Any party may obtain discovery by one or more of the following methods: [¶] (1) Oral and written depositions. [¶] (2) Interrogatories to a party. [¶] (3) Inspections of documents, things, and places. [¶] (4) Physical and mental examinations. [¶] (5) Requests for admissions. [¶] (6) Simultaneous exchanges of expert trial witness information. [¶] (b) The court shall restrict the frequency or extent of use of these discovery methods if it determines either of the following: [¶] (1) The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive. [¶] (2) The selected method of discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, and the importance of the issues at stake in the litigation. [¶] The court may make these determinations pursuant to a motion for a protective order by a party or other affected person. This motion shall be accompanied by a declaration stating facts showing a good faith attempt at an informal resolution of each issue presented by the motion. [¶] The court shall impose a monetary sanction under Section 2023 against any party, person, or attorney who unsuccessfully makes or opposes a motion for a protective order, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. [¶] (c) Unless there is a rule of the Judicial Council, or a local court rule or local uniform written policy to the contrary, the methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or another method, shall not operate to delay the discovery of any other party. However, on motion and for good cause shown, the court may establish the sequence and timing of discovery for the convenience of parties and witnesses and in the interests of justice. [¶] (d) In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code. [¶] (e) Section 1013 shall be applicable to any method of discovery or service of a motion for discovery provided for in this article."

[5]Section 2023 provides: "(a) Misuses of the discovery process include, but are not limited to, the following: [¶] (1) Persisting, over objection and without substantial justification, in an attempt to obtain information or materials that are outside the scope of permissible discovery. [¶] (2) Using a discovery method in a manner that does not comply with its specified procedures. [¶] (3) Employing a discovery method in a manner or to an extent that causes unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. [¶] (4) Failing to respond or to submit to an authorized method of discovery. [¶] (5) Making, without substantial justification, an unmeritorious objection to discovery. [¶] (6) Making an evasive response to discovery. [¶] (7) Disobeying a court order to provide discovery. [¶] (8) Making

Section 2019, subdivision (b), provides generally that any discovery method, including depositions, may be restricted in the frequency or extent of its use if the trial court determines either that "(1) The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive" or "(2) The selected method of discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, and the importance of the issues at stake in the litigation." (§ 2019, subd. (b)(1), (2).) The trial court makes this determination upon a motion for a protective order, which may be brought by "a party or other affected person." (§ 2019, subd. (b).)

---

or opposing, unsuccessfully and without substantial justification, a motion to compel or to limit discovery. [¶] (9) Failing to confer in person, by telephone, or by letter with an opposing party or attorney in a reasonable and good faith attempt to resolve informally any dispute concerning discovery, if the section governing a particular discovery motion requires the filing of a declaration stating facts showing that such an attempt has been made. Notwithstanding the outcome of the particular discovery motion, the court shall impose a monetary sanction ordering that any party or attorney who fails to confer as required pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. [¶] (b) To the extent authorized by the section governing any particular discovery method or any other provision of this article, the court, after notice to any affected party, person, or attorney, and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process. [¶] (1) The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. The court may also impose this sanction on one unsuccessfully asserting that another has engaged in the misuse of the discovery process, or on any attorney who advised that assertion, or on both. If a monetary sanction is authorized by any provision of this article, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. [¶] (2) The court may impose an issue sanction ordering that designated facts shall be taken as established in the action in accordance with the claim of the party adversely affected by the misuse of the discovery process. The court may also impose an issue sanction by an order prohibiting any party engaging in the misuse of the discovery process from supporting or opposing designated claims or defenses. [¶] (3) The court may impose an evidence sanction by an order prohibiting any party engaging in the misuse of the discovery process from introducing designated matters in evidence. [¶] (4) The court may impose a terminating sanction by one of the following orders: [¶] (A) An order striking out the pleadings or parts of the pleadings of any party engaging in the misuse of the discovery process. [¶] (B) An order staying further proceedings by that party until an order for discovery is obeyed. [¶] (C) An order dismissing the action, or any part of the action, of that party. [¶] (D) An order rendering a judgment by default against that party. [¶] (5) The court may impose a contempt sanction by an order treating the misuse of the discovery process as a contempt of court. [¶] (c) A request for a sanction shall, in the notice of motion, identify every person, party, and attorney against whom the sanction is sought, and specify the type of sanction sought. The notice of motion shall be supported by a memorandum of points and authorities, and accompanied by a declaration setting forth facts supporting the amount of any monetary sanction sought."

The Civil Discovery Act also contains express authorization for the management of particular discovery methods. The provisions which are applicable to oral depositions are set forth in section 2020 and sections 2025-2029. Of particular importance in the present case is section 2020, subdivision (a),[6] which provides, in pertinent part, that "[t]he method for obtaining discovery within the state from one who is not a party to the action is an oral deposition under Section 2025, a written deposition under Section 2028, or a deposition for production of business records and things under subdivisions (d) and (e)." Section 2025 provides two procedures for dealing with misuse of the oral deposition method of discovery.

First, at subdivision (g), section 2025 provides that a party may move for an order staying the taking of a deposition and quashing the deposition notice. The specific procedure for a motion to quash a deposition subpoena is set forth at section 1987.1,[7] which provides, in pertinent part, that where a subpoena requires the attendance of a witness at a deposition, "the court, upon motion reasonably made by the party, the witness, or any consumer described in Section 1985.3, or upon the court's own motion after giving counsel notice and an opportunity to be heard, may make an order quashing

---

[6]Section 2020, subdivision (a) provides: "(a) The method for obtaining discovery within the state from one who is not a party to the action is an oral deposition under Section 2025, a written deposition under Section 2028, or a deposition for production of business records and things under subdivisions (d) and (e). Except as provided in paragraph (1) of subdivision (h) of Section 2025, the process by which a nonparty is required to provide discovery is a deposition subpoena. The deposition subpoena may command any of the following: [¶] (1) Only the attendance and the testimony of the deponent, under subdivision (c). [¶] (2) Only the production of business records for copying, under subdivision (d). [¶] (3) Both the attendance and the testimony of the deponent, as well as the production of business records, other documents, and tangible things, under subdivision (e). [¶] Except as modified in this section, the provisions of Chapter 2 (commencing with Section 1985), and of Article 4 (commencing with Section 1560) of Chapter 2 of Division 11 of the Evidence Code, apply to a deposition subpoena."

[7]Section 1987.1 provides: "When a subpoena requires the attendance of a witness or the production of books, documents or other things before a court, or at the trial of an issue therein, or at the taking of a deposition, the court, upon motion reasonably made by the party, the witness, or any consumer described in Section 1985.3, or upon the court's own motion after giving counsel notice and an opportunity to be heard, may make an order quashing the subpoena entirely, modifying it, or directing compliance with it upon such terms or conditions as the court shall declare, including protective orders. In addition, the court may make any other order as may be appropriate to protect the parties, the witness, or the consumer from unreasonable or oppressive demands including unreasonable violations of a witness's or consumer's right of privacy. Nothing herein shall require any witness or party to move to quash, modify, or condition any subpoena duces tecum of personal records of any consumer served under paragraph (1) of subdivision (b) of Section 1985.3."

the subpoena entirely, modifying it, or directing compliance with it, upon such terms or conditions as the court shall declare, including protective orders. In addition, the court may make any other order as may be appropriate to protect the parties, the witness, or the consumer from unreasonable or oppressive demands including unreasonable violations of a witness's or consumer's right of privacy."

Second, at subdivision (i), section 2025 authorizes protective orders. "Before, during, or after a deposition, any party, any deponent, or any other affected natural person or organization may promptly move for a protective order . . . [¶] [t]he court, for good cause shown, may make any order that justice requires to protect any party, deponent, or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense." Section 2025, subdivision (i) also sets forth specific types of protective orders applicable to depositions. For example, the trial court may order that "the deposition not be taken at all" (subd. (i)(1)), that "the deposition be taken only on certain specified terms and conditions" (subd. (i)(5)), and that "certain matters not be inquired into" (subd. (i)(9)).

This discussion of the trial court's authority to manage discovery and to prevent the misuse of depositions in SVPA proceedings is not meant to be exhaustive. The Civil Discovery Act must be applied in each SVPA proceeding on a case-by-case basis. For example, the trial court may take into account that in some cases expert witness testimony will have been elicited before trial, because the SVPA provides pretrial opportunities to call and cross-examine experts and other witnesses at the probable cause hearing (Welf. & Inst. Code, § 6602; *People v. Butler* (1998) 68 Cal.App.4th 421, 434-435 [80 Cal.Rptr.2d 357]) and at the annual show cause hearing to review the mental status of committed persons. (Welf. & Inst. Code, § 6605; *People v. Cheek* (2001) 25 Cal.4th 894, 903 [108 Cal.Rptr.2d 181, 24 P.3d 1204].) In the present proceedings, we express no opinion as to the ultimate resolution of the People's motions to quash notices of deposition. The record before us is inadequate for informed review concerning whether the depositions of numerous Atascadero State Hospital physicians and psychologists are within the permissible scope of discovery or whether the depositions are properly subject to a protective order or a motion to quash. Therefore, we will vacate the trial court's orders denying the People's motions and direct the trial court to reconsider its rulings in accordance with those provisions of

the Civil Discovery Act which authorize a trial court to exercise its discretion to manage civil discovery.

In so ruling, we acknowledge that the application of the Civil Discovery Act in SVPA proceedings may, as the People argued in *Leake*, " 'take a toll on the resources of district attorneys' offices and the Department of Mental Health . . . , whose evaluators are already busy enough trying to conduct evaluations pursuant to the SVP Act . . . without having to travel up and down the state to sit in depositions.' " (*Leake, supra,* 87 Cal.App.4th at p. 682.) We also acknowledge the People's contention that this burden can be avoided only if civil discovery is forbidden in SVPA proceedings, and criminal discovery is allowed only to the extent permitted in juvenile delinquency proceedings under Welfare and Institutions Code section 602 et seq., pursuant to *Joe Z. v. Superior Court* (1970) 3 Cal.3d 797 [91 Cal.Rptr. 594, 478 P.2d 26] (*Joe Z.*). Since the *Joe Z.* decision, discovery practice in juvenile delinquency proceedings has paralleled discovery in adult criminal cases. (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 53-54 [19 Cal.Rptr.2d 73, 850 P.2d 621].)

The People base their contention on the view that SVPA proceedings are quasi-criminal in nature because the SVP's liberty interest is at stake, as well as the Supreme Court's reasoning in *Joe Z.* that "the need for expeditious and informal adjudications in juvenile court [citation] belies the wisdom or necessity of any indiscriminate application of civil discovery procedures [and] the quasi-criminal character of delinquency proceedings . . . lead[s] us to conclude that the juvenile courts should have the same degree of discretion as a court in an ordinary criminal case to permit, upon a proper showing, discovery between the parties." (*Joe Z., supra,* 3 Cal.3d at p. 801.) However, we cannot similarly limit discovery in SVPA proceedings because the California Supreme Court has determined that SVPA proceedings are civil commitment proceedings, which are intended to provide treatment to "mentally disordered individuals who cannot control sexually violent criminal behavior." (*Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1171.) Therefore, SVPA proceedings are distinguishable from juvenile delinquency proceedings, which our Supreme Court has described as having a "quasi-criminal nature." (*Joe Z., supra,* 3 Cal.3d at p. 801.) Moreover, as we have discussed, a commitment proceeding under the SVPA is a type of proceeding—a special proceeding of a civil nature—to which the Civil Discovery Act expressly applies.

Nor can we rely on *Gary W.* and impose a burden on the proponent of discovery in SVPA proceedings to obtain a court order before propounding any discovery, when the Civil Discovery Act currently does not require a

prior showing of necessity for discovery in a special proceeding of a civil nature. ▉ To do so would exceed our jurisdiction, because it is a "settled rule of construction that courts must not add language to a statute under the guise of construction to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*People v. Martinez* (2001) 93 Cal.App.4th 481, 492 [113 Cal.Rptr.2d 229].)

▉ Finally, we agree with the *Leake* court that the People's arguments concerning the potential negative impact of civil discovery in SVPA proceedings, including the increase in costs and delays, and the burden placed upon the trial court and the DMH, "are policy arguments that should be addressed to the Legislature." (*Leake, supra,* 87 Cal.App.4th at p. 682.)

Our decision today is limited to the following conclusions: (1) the Civil Discovery Act applies in SVPA proceedings and therefore the deposition method of discovery is available; (2) the right to discovery in SVPA proceedings is subject to those provisions of the Civil Discovery Act which expressly authorize the trial court to manage discovery and to prevent misuse of discovery procedures; and (3) the scope of discovery in SVPA proceedings is circumscribed by the two narrow issues presented at trial which are whether the person sought to be committed "has been convicted of a sexually violent offense against two or more victims" (Welf. & Inst. Code, § 6600, subd. (a)(1)), and whether the person "has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior if he or she is released." (Welf. & Inst. Code, § 6600, subd. (a)(1).)

## IV. DISPOSITION

In *People v. Superior Court (Cheek)*, No. H022919: Let a peremptory writ of mandate issue commanding the superior court to vacate its order denying the People's motion for order quashing notice of deposition, and to reconsider its ruling in accordance with those provisions of the Civil Discovery Act of 1986 (Code Civ. Proc., § 2016 et seq.) which authorize a trial court to exercise its discretion to manage civil discovery. The temporary stay order is vacated.

In *People v. Superior Court (Grant)*, No. H022885: Let a peremptory writ of mandate issue commanding the superior court to vacate its order denying the People's motion for order quashing notice of deposition, and to reconsider its ruling in accordance with those provisions of the Civil Discovery Act of 1986 (Code Civ. Proc., § 2016 et seq.) which authorize a trial court to

exercise its discretion to manage civil discovery. The temporary stay order is vacated.

Wunderlich, J., and O'Farrell, J.,* concurred.

---

*Judge of the Monterey Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.