Filed 2/9/15  P. v. Teodosio CA5

**NOT TO BE PUBLISHED IN THE OFFICAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOE TONY TEODOSIO,<br><br>    Defendant and Appellant. | F067166<br><br>(Super. Ct. No. 141647)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Nancy Ashley, Judge.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Melissa Lipon, Deputy Attorneys General for Plaintiff and Respondent.

-ooOoo-

On July 17, 1998, appellant Joe Tony Teodosio was convicted of one count of stalking (Pen. Code, § 646.9) and was sentenced to two years in prison.  On May 4, 1999, Teodosio was classified as a mentally disordered offender (MDO) under Penal Code section 2962 and was hospitalized.  On February 7, 2013, the district attorney filed a

petition seeking to extend Teodosio's commitment as an MDO pursuant to Penal Code sections 2970 and 2972, subdivision (e). Teodosio waived his right to a jury trial and, on April 3, 2013 following a bench trial, the court granted the petition to extend Teodosio's commitment to May 3, 2014. This appeal followed.

On appeal, Teodosio argues that (1) the trial court erred by permitting the district attorney's replacement expert to testify without being named as a potential expert during the discovery process; (2) the court erred by refusing to consider Teodosio's motion to discover potential *Brady*[1] material relating to the district attorney's original expert witness; (3) the court erred by permitting the district attorney's replacement expert to rely on the report prepared by the district attorney's original expert witness; and (4) the cumulative effect of the errors alleged above deprived Teodosio of his right to due process of law. We do not find these arguments to be persuasive and affirm the trial court's order to extend Teodosio's civil commitment.

### FACTS

On February 7, 2013, a petition was filed seeking to extend Teodosio's civil commitment as an MDO. His bench trial began on April 3, 2013 and, on April 9, the second day of trial and first day of testimony, the district attorney informed the court that it had learned on April 4 that Teodosio's treating psychiatrist, Dr. Susan Ahart, was subject to a criminal investigation and had been placed on administrative leave. The district attorney further informed the court that the nature of the investigation was not yet known, and that Ahart intended to exercise her Fifth Amendment right against self-incrimination if questioned about the matter. The district attorney also stated that Teodosio's previous psychiatrist, Dr. Amrit Saini, was available to testify in place of Ahart.

---

[1]*Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

2

After these disclosures were made, Ahart was called to the stand, where she confirmed that she would not answer any questions concerning the investigation. At that point, Teodosio's counsel moved to exclude Ahart as a witness as Teodosio would be unable to fully cross-examine her. Teodosio also moved to exclude Ahart's written reports; to prohibit Saini from testifying as he was not listed as a potential expert witness during discovery; and to dismiss the petition for lack of legally admissible evidence.

After hearing arguments on Teodosio's motions, the court excluded Ahart as a witness but permitted Saini to testify in her place and to rely on Ahart's reports. The court also found that dismissal was inappropriate as Ahart's issues had just arisen and other remedies were available. The court did, however, offer a continuance so that Teodosio could prepare for Saini's testimony; Teodosio declined.

When trial resumed, Saini testified that Teodosio's nursing records from the previous year showed that he routinely refused to attend group sessions or provide blood and urine samples. The nursing records also showed that Teodosio suffered from paranoia and delusions, as well as auditory and visual hallucinations, throughout the previous year. Saini noted that the records referred to Teodosio's claim that he received information from "the mind machine," which Saini recognized as a delusion that Teodosio had also demonstrated when he was Saini's patient. The nursing records also contained several progress notes that stated Teodosio "[had] not made progress towards meeting discharge criteria due to his refusal to participate in treatment and continued [demonstration of] a fixed delusional system with paranoid thoughts."

Saini further testified that notes from a conference between Teodosio's psychologist and social worker showed a diagnosis of schizoaffective disorder and polysubstance abuse. The notes also stated that the risk of aggression, assault, and victimization by Teodosio was high due to those serious mental disorders. The notes concluded by stating that Teodosio showed "no insight into his mental illness." Based on

3

these records, Saini testified that Teodosio's mental disorder was not in remission and that he posed a substantial threat to others.

Over the objection of Teodosio's counsel, Saini went on to testify that Dr. Ahart's records reported that Teodosio suffered from delusions and hallucinations and that he had stated he would use marijuana and amphetamines if he were released from the hospital. On cross-examination, Saini acknowledged that Teodosio had been compliant with his medication and had not exhibited any aggressive behavior during the previous year. Saini also acknowledged that, prior to Ahart's final report, all of Ahart's notes and reports had listed Teodosio's risk of violence as low.

Following Saini's testimony, Teodosio testified on his own behalf. He testified that he had been framed twice for stalking, and that the doctors who initially evaluated him declared that he was able to return home, but their reports had been intercepted and replaced with incriminating reports that were used to commit him. He testified that he occasionally hears voices and that he assumes they come from the "mind machine." Teodosio also testified that Saini was not a doctor and that he tapped Teodosio's phone and intercepted his mail.

As far as his treatment was concerned, Teodosio testified that he was taking his medications and they were having a beneficial effect. He admitted that he had not attended group sessions in several years because he did not feel they were "worth it," and that he refused blood draws because they were painful. Teodosio stated that he would continue taking his medication if he were released but that he would probably also use methamphetamine.

At the conclusion of trial, the court found it had been established beyond a reasonable doubt that Teodosio was an MDO and extended his civil commitment until May 3, 2014.

## *DISCUSSION*

**I.    *Court did not err by permitting Dr. Saini to testify as an expert witness***

Pursuant to Penal Code section 2962, prisoners with severe mental disorders that contributed to their crimes can be subject to involuntary civil commitment prior to release on parole if they suffer from a disorder that is not in remission and pose a substantial danger of physical harm to others.  Such civil commitments can be extended upon petition by the district attorney's office, provided it can be established at the civil commitment trial that the patient still qualifies as an MDO.  (Pen. Code, §§ 2970, 2972.)  While the trial is civil in nature, "in order to reduce costs the rules of criminal discovery, as well as civil discovery, shall be applicable."  (Pen. Code, § 2972, subd. (a).)

In the instant case, there is no dispute that the district attorney failed to name Saini as an expert witness prior to the commencement of trial, nor is there a dispute that such a failure runs afoul of the rules of both civil and criminal discovery.[2]  (Code Civ. Proc., § 2034.010 et seq.; Pen. Code, §§ 1054.2, 1054.7.)  On appeal, however, Teodosio asserts that the remedy for this violation should have been the exclusion of Saini as a witness.  We disagree.  "The standard of review for a discovery order is abuse of discretion, because management of discovery lies within the sound discretion of the trial court.  [Citation.]"  (*People v. Superior Court* (*Cheek*) (2001) 94 Cal.App.4th 980, 987.)

As noted above, the rules of criminal discovery are applicable to civil commitment trials.  Under Penal Code section 1054.5, subdivision (b), a trial court may remedy a failure to identify a witness timely by "any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence,

_____

[2]We assume for the purpose of argument that Teodosio's contention on page 22 of his opening brief is accurate in that "a qualifying demand for the expert witnesses" was made per Code if Civil Procedure section 2034.010.  However, there is no citation to the record (or anything located independently) in support of this contention.

5

continuance of the matter, or any other lawful order." The exclusion of a witness, however, may only be done "if all other sanctions have been exhausted." (Pen. Code, § 1054.5, subd. (c).)

Here, the trial court responded to the need for Saini to testify by offering a continuance of the matter to Teodosio so that he could prepare for Saini's testimony. As "continuance of the matter" is among the enumerated remedies for a discovery violation under Penal Code section 1054.5, subdivision (b), and exclusion of a witness is not to be ordered until "all other sanctions have been exhausted," we cannot find error in the trial court's decision to permit Saini to testify in this matter. Further, given the fact that the need to use Saini as a witness only arose after Ahart became unexpectedly unavailable to testify, resorting to a punitive sanction would have been inappropriate.

## II.     Trial court did not err by failing to determine whether investigation of Ahart was discoverable exculpatory evidence under *Brady*

In a criminal proceeding, the prosecution has a duty to disclose any material exculpatory or impeachment evidence. (*Brady, supra,* 373 U.S. at pp. 87-88; *People v. Salazar* (2005) 35 Cal.4th 1031, 1042.) While civil commitment trials are not criminal proceedings, MDO's are afforded many of the protections of criminal defendants, such as the right to an attorney, the right to a jury trial, and the imposition of the "beyond a reasonable doubt" standard of proof. (Pen. Code, § 2972, subd. (a).)

Here, Teodosio asserts that the obligations of *Brady* extend to civil commitment trials. Given the criminal protections extended to MDO's, as well as the fact that criminal discovery rules are applicable to civil commitment proceedings, we find some merit to Teodosio's position. He also asserts that the trial court violated the protections afforded by *Brady* when it failed to acknowledge Teodosio's classification of the investigation into Ahart as *Brady* material and failed to ascertain the nature of that

6

investigation to determine if it would provide material impeachment evidence for Teodosio to use in addressing Ahart's reports.

Even assuming that *Brady* protections apply to civil commitment trials, however, we find that Teodosio has failed to establish any violation of those protections. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." (*Strickler v. Greene* (1999) 527 U.S. 263, 281-282.) In order to establish prejudice, it must be shown that there is a "'reasonable probability of a different result.'" (*Banks v. Dretke* (2004) 540 U.S. 668, 699.)

Here, as the nature of the investigation into Ahart was unknown at the time of trial, Teodosio is unable to show that disclosure of the nature of the investigation would be material impeachment evidence. Indeed, his position is based solely on speculation that, had the trial court ascertained the nature of the investigation against Ahart and disclosed it to Teodosio, he would have been able to discredit Ahart's reports. Having refused the offered continuance and the opportunity to further develop (or learn of) the existence of Brady material, Teodosio's contentions ring hollow. Further, and more importantly, it is abundantly clear from the record that Teodosio was not prejudiced by not knowing the nature of the investigation into Ahart.

Indeed, during Saini's testimony at Teodosio's trial, the only substantive material Saini drew from Ahart's notes and reports was that Teodosio believed he was framed, had delusions about receiving information from "the mind machine," and had expressed a desire to use illegal drugs if he were released from the hospital. All of this information, however, was corroborated by Teodosio's own testimony at trial.

Accordingly, even if the trial court had been able to ascertain that the investigation into Ahart concerned matters that gravely impaired the credibility of her reports,

7

Teodosio could not establish a reasonable probability of a different result as all of the evidence culled from Ahart's reports was readily admissible through other means.

### III.    Trial court did not err by permitting Dr. Saini to rely on Dr. Ahart's reports

Teodosio also argues on appeal that the trial court erred by allowing Saini to rely on Ahart's written reports. We disagree.

Under Evidence Code section 801, a testifying expert is permitted to rely upon material "that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates …." (Evid. Code, § 801, subd. (b).) Here, there can be no denying that reports and notes by a patient's treating psychiatrist are material "of a type that reasonably may be relied upon" when assessing that patient's mental health.

Teodosio's main contention with the use of Ahart's reports, however, is that Ahart's exclusion as a witness made it impossible for Teodosio to cross-examine her about the content of those reports. Under Evidence Code section 804, "[i]f a witness testifying as an expert testifies that his opinion is based in whole or in part upon the opinion or statement of another person, such other person may be called and examined by any adverse party as if under cross-examination concerning the opinion or statement." (*Id.*, subd. (a).) That right to cross-examine, however, does not mean that an expert cannot rely upon the opinion of an unavailable witness. In fact, "[a]n expert opinion otherwise admissible is not made inadmissible by this section because it is based on the opinion or statement of a person who is unavailable for examination" under section 804. (*Id.*, subd. (d).)

In the instant case, Ahart was excluded as a witness due to her decision to assert her Fifth Amendment right against self-incrimination. "[A] witness, upon proper assertion of the privilege against self-incrimination, is unavailable as a witness at trial. [Citation.]" (*People v. Hollinquest* (2010) 190 Cal.App.4th 1534, 1547.) Accordingly,

under Evidence Code section 804, subdivision (d), Saini was free to give testimony based in part on Ahart's opinion, even if Ahart could not be called by Teodosio for cross-examination.

Teodosio's argument that the investigation into Ahart made her reports fundamentally unreliable is also misplaced. Though it is conceivable that the investigation into Ahart may have concerned matters of or relating to her professional honesty, the record clearly shows that the material from Ahart's reports that was noted by Saini was corroborated by untainted reports by Teodosio's nurses, psychologist, and therapists, as well as Teodosio's own testimony. Given this extensive corroboration, there is no merit to his assertion that Ahart's reports were not reasonably reliable.

Further, even if the trial court did err by permitting Saini to rely on Ahart's reports, any error was harmless. At trial, Saini testified that, solely from the notes and reports of Teodosio's nurses, psychologist, and therapists, he could conclude that Teodosio suffered from severe mental disorders, those disorders were not in remission, and he posed a substantial threat to others. In fact, Saini devoted relatively little time to discussing Ahart's reports, and, as previously noted, the material that he did cite was duplicative of information contained in other, untainted reports, as well as Teodosio's own testimony. Given the large amount of admissible evidence that supported the court's findings, it is simply not the case that Teodosio was prejudiced by the court's decision to admit Dr. Ahart's reports, even if those reports had been improperly admitted.

## IV. *Cumulative effect of errors alleged by Teodosio do not merit new trial*

Lastly, Teodosio asserts that, even if the errors alleged above were not individually prejudicial, their cumulative effect merits an award of a new trial. As we held above that the errors alleged by Teodosio were either not errors or were harmless errors, we must reject this contention.

## *DISPOSITION*

The order is affirmed.

_____

Smith, J.

WE CONCUR:

_____

Detjen, Acting P.J.

_____

Peña, J.