Filed 7/17/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARVIN SLOAN,<br><br>    Defendant and Appellant. | C095622<br><br>(Super. Ct. No. 03F00743) |

APPEAL from a judgment of the Superior Court of Sacramento County, Allen H. Sumner, Judge. Reversed with directions.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Dina Petrushenko and Julie Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

Marvin Sloan appeals from the trial court's order finding he qualified as a sexually violent predator (SVP) and committing him to the State Department of State Hospitals

(Department of State Hospitals). His sole argument on appeal is that the trial court erred in allowing the People to use a privately retained expert to testify at trial. To support this position, Sloan cites *Needham v. Superior Court* (2022) 82 Cal.App.5th 114, review granted October 26, 2022, S276395 (*Needham*), which held that the People have no right to privately retain an expert under the Sexually Violent Predators Act (SVPA). (*Needham*, at p. 128.) Our Supreme Court has recently granted review in *Needham* and will decide whether *Needham*'s interpretation of the SVPA was correct. In the meantime, we join *Needham* in concluding that the People cannot retain an expert to testify at an SVP trial.

We therefore reverse the order declaring Sloan to be an SVP and committing him to the Department of State Hospitals. We remand to the trial court to issue an order excluding the testimony of the People's privately retained expert and to conduct a new trial. We express no opinion as to the People's ability to obtain a replacement evaluator.

## FACTUAL AND PROCEDURAL BACKGROUND

The Sacramento County District Attorney filed a petition to commit Sloan as an SVP (Welf. & Inst. Code,[1] § 6600 et seq.) in November 2018. The People supported this petition with evaluations of Sloan prepared by Dr. Jocelyn Chen and Dr. Roudabeh Rahbar. Both Dr. Chen and Dr. Rahbar testified at Sloan's probable cause hearing (§ 6602) in 2019.

In April 2021, the People told the trial court that Dr. Rahbar was no longer available as an expert due to private medical and personal matters. The People disclosed Dr. Craig King as a replacement evaluator in July 2021. Dr. King had started working on Sloan's case in February 2021 and completed an evaluation report of Sloan in March 2021. In preparing the report, Dr. King did not interview Sloan, but he did review

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

documents from the Department of Corrections and Rehabilitation, prior SVP evaluations of Sloan, documents relating to Sloan's offenses, and Sloan's Department of State Hospitals records.

Sloan filed a motion to strike Dr. King's evaluation, arguing that Dr. King's appointment was improper because the People failed to establish Dr. Rahbar was unavailable, the People prejudiced the defense case by disclosing Dr. King as a replacement on the eve of trial, and Dr. King produced a deficient report because he failed to interview Sloan. The trial court found that the Department of State Hospitals had not met its burden to show that Dr. Rahbar was unavailable, so Dr. King could not be appointed as a replacement evaluator.

The People then subpoenaed Dr. Rahbar. In August 2021, the trial court granted the Department of State Hospitals's motion to quash the People's subpoena of Dr. Rahbar. Arguing the trial court's ruling confirmed Dr. Rahbar's unavailability, the People asked the trial court to reconsider allowing Dr. King to testify in the People's case-in-chief as Dr. Rahbar's replacement. The trial court responded that its prior ruling precluded Dr. King from testifying only as a replacement evaluator, but it did not "preclude him from testifying in some other capacity." Thus, the People could retain Dr. King as a "third expert" to review the evaluations prepared by evaluators appointed by the Department of State Hospitals "and come in here and testify." Defense counsel objected, arguing that Dr. King was an unauthorized replacement evaluator, Dr. King's evaluation contained material legal error because Dr. King did not interview Sloan, and the late disclosure of Dr. King's retainment prejudiced the defense. Defense counsel added that the People could not use Dr. King as a retained expert because they failed to comply with the procedures set forth in the Code of Civil Procedure.

The trial court acknowledged that the People could "initiate the full replacement evaluation" or offer Dr. King "simply as a retained expert." But considering Sloan's "competing interest in a speedy trial" and the importance of expert reports in SVP cases,

3

the trial court preferred to "get the case on track for trial with the most complete expert reports available." It ultimately permitted the People to retain Dr. King as an expert.

Sloan's SVP court trial began in October 2021, and Dr. King testified. Following the parties' posttrial briefings, the trial court issued an order effective on January 25, 2022, finding that Sloan qualified as an SVP and ordered him committed to the Department of State Hospitals. Sloan timely appealed.[2]

## DISCUSSION

Citing *Needham*, Sloan contends the People have no right under the SVPA to retain a testifying expert, so he argues the trial court erred in permitting Dr. King to testify at his trial. On our de novo review, we agree. (See *Gilbert v. Superior Court* (2014) 224 Cal.App.4th 376, 380 [review is de novo].)

The SVPA provides a civil commitment scheme to confine and treat a limited group of criminal offenders who are "extremely dangerous as the result of mental impairment, and who are likely to continue committing acts of sexual violence even after they have been punished for such crimes." (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1143-1144.) We recognize, as did the *Needham* court, that "the clear and present danger posed by sexually violent predators warrants such a scheme." (*Needham, supra*, 82 Cal.App.5th at p. 120, rev. granted.) But at the same time, this is "an extraordinary deprivation of a person's liberty: it enables the state to indefinitely detain a person, not for a crime actually committed, but for a crime that may be committed in the future." (*Ibid.*) Therefore, the scheme "must be carefully implemented and applied only where there is a high degree of certainty that it is warranted." (*Ibid.*)

---

[2] We received defendant's notice of appeal on February 1, 2022. The briefing schedule was delayed due to defendant's motion to augment record and the parties' requests for extension of time. The case was fully briefed on April 3, 2023.

The Legislature prescribed a detailed process for an SVP commitment that "centers around multiple evaluations by *independent* experts." (*Needham, supra,* 82 Cal.App.5th at p. 120, rev. granted.) This process expressly provides that a person subject to an SVP petition may retain an expert to testify at trial (§ 6603, subd. (a)), but it makes no mention of the district attorney's right to do the same. (*Needham*, at pp. 125-127.) This invokes the statutory principle that "the expression of one thing in a statute ordinarily implies the exclusion of other things." (*In re J.W.* (2002) 29 Cal.4th 200, 209.) Although this principle is not "applied invariably and without regard to other indicia of legislative intent," (*ibid.*) the carefully crafted SVPA demonstrates that the Legislature intended to provide a "one-sided right" to retain a testifying expert. (*Needham*, at p. 126.)

The Civil Discovery Act also does not give the People the right to retain a testifying expert. An SVPA proceeding is civil in nature, to which the Civil Discovery Act generally applies. (*People v. Superior Court (Cheek)* (2001) 94 Cal.App.4th 980, 988.) But due to the unique nature of the SVPA proceedings, "[t]he Civil Discovery Act must be applied in each SVPA proceeding on a case-by-case basis." (*Id.* at p. 994.) The SVPA scheme was drafted carefully to "ensure that an extraordinary deprivation of liberty has as many safeguards as possible" and "revolves around the *independent* experts." (*Needham, supra*, 82 Cal.App.5th at p. 127, rev. granted.) These safeguards include the procedures for retaining independent experts and specific assessment protocols that the independent experts must follow in their evaluations. (§§ 6601, subds. (c)-(g), 6603, subd. (d); *Needham*, at pp. 125-126.) Allowing the People to bypass these safeguards by presenting testimony from their own experts who need to meet only the basic requirements of the Civil Discovery Act would seriously undermine these safeguards. (*Needham,* at p. 127.) Thus, the expert witness provisions of the Civil Discovery Act do not apply in SVPA proceedings. (*Needham,* at p. 120.)

For these reasons, the trial court erred in allowing the People to use Dr. King as their retained expert to testify at trial.

## DISPOSITION

The order finding Sloan qualified as an SVP and committing him to the Department of State Hospitals is reversed.  The matter is remanded to the trial court to issue an order excluding the testimony of the People's privately retained expert and to conduct a new trial.

 

 

_____

MESIWALA, J.

We concur:

_____

DUARTE, Acting P. J.

_____

BOULWARE EURIE, J.