[No. D039697. Fourth Dist., Div. One. Sept. 5, 2003.]

In re the Marriage of GEORGIANA and HARRY FRANKLIN HIXSON, JR.
GEORGIANA BREEDEN HIXSON, Appellant, v.
HARRY FRANKLIN HIXSON, JR., Respondent.

**COUNSEL**

Haight, Brown & Bonesteel, John W. Sheller, Rita Gunasekaran, Jennifer K. Saunders; and Gary S. Wolfe for Appellant.

Ault, Jones & Robinson, Rex L. Jones, Julie R. Barnes; Cooley Godward, Anthony M. Stiegler, Christopher R. J. Pace, Andrea S. Hoffman; Luce, Forward, Hamilton & Scripps and Mary F. Gillick for Respondent.

**OPINION**

**BENKE, Acting P. J.**—In 1997 appellant, petitioner Georgiana Breeden Hixson (Breeden), and respondent, Harry Franklin Hixson, Jr., entered into a series of stipulated judgments dividing and distributing their marital assets. In 2001 Breeden filed an order to show cause with respect to community property which she alleged had not been previously adjudicated. Breeden propounded discovery with respect to the factual allegations set forth in her order to show cause and the family court granted Hixson's motion to prevent the discovery from taking place. Thereafter the family court denied Breeden any relief on the order to show cause.

We affirm. ██ The evidence in the record is not sufficient to establish the existence of an unadjudicated community asset as to which discovery is necessary or as the basis for granting relief on Breeden's order to show cause. Thus the family court acted properly in denying Breeden any relief on the order to show cause.

## SUMMARY

After 32 years of marriage, Breeden and Hixson separated in 1995. During the course of the marriage Hixson was the president and chief executive

officer of a large publicly traded biotechnology company, Amgen, Inc. (Amgen). The bulk of the parties' marital assets, consisting of Amgen stock and their interests in limited partnerships, were held in a revocable family trust. Following initiation of dissolution proceedings, Hixson provided Breeden and her counsel with an extensive declaration setting forth the trust's assets. In addition, Hixson participated in two days of depositions and provided Breeden with all the financial records requested by her counsel.

In 1997, by way of a series of stipulated judgments, most of the assets held in the trust were distributed to Breeden and Hixson as separate property. However, because of restrictions on their right to transfer their limited partnership interests, those interests were held in the trust even after dissolution of the marriage.

In 2001 Breeden filed a probate petition in which she alleged that $34 million in stock transactions had not been accounted for, that without her knowledge or consent, a substantial number of Amgen shares had been withdrawn or distributed from the trust, and that Hixson had exploited for himself an investment opportunity which should have been shared with the marital community.

On Hixson's motion, the probate petition was transferred to the family court, where Breeden recast it as an order to show cause. Prior to the hearing on the order to show cause, Breeden propounded discovery on Hixson. Hixson moved to quash the discovery. The family court initially stayed the discovery pending a hearing on whether it would permit the discovery to take place.

On December 13, 2001, after considering declarations submitted by the parties, the existing record and argument of counsel, the trial court refused to permit Breeden to go forward with the discovery she proposed. Thereafter, the family court entered an order denying Breeden any relief on her order to show cause.

Breeden filed a timely notice of appeal.

## DISCUSSION

In her principal argument on appeal Breeden contends Family Code section 2556[1] gave her the absolute right to conduct discovery with respect to the allegations set forth in her order to show cause (OSC). Hixson on the other hand contends Breeden had no right to any discovery. ▮ We conclude

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

the family court, like any other court presiding over a civil proceeding, had discretion to limit discovery. That discretion required that it consider the nature of the proceeding before it and the issues in controversy. Here we find that under all the circumstances set forth in the record, the family court did not abuse its discretion in limiting Breeden's discovery and did not err in denying her relief on her OSC.

## I

We begin our analysis with section 2556, which states: "In a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment. In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability."

Section 2556 was derived from the substantively identical provisions of former Civil Code section 4353. Prior to enactment of former Civil Code section 4353, a spouse who believed that community property had not been adjudicated in a prior dissolution proceeding was required to bring a separate civil action. (*Henn v. Henn* (1980) 26 Cal.3d 323, 330–332 [161 Cal.Rptr. 502, 605 P.2d 10].) "There are no reported decisions that have held that a community property claim to an asset left unmentioned in a prior judicial division of community property may be adjudicated in a motion to modify the prior decree. The only reported decisions that address this issue correctly conclude that such claims may only be adjudicated in a separate action. [Citations.]" (*Id.* at p. 332.)

The legislative history of former Civil Code section 4353 indicates that it was sponsored by the author of a noted treatise on family law, Justice Donald King. Justice King believed that permitting litigation of unadjudicated community property claims by way of orders to show cause in the prior family law matter "would be considerably less expensive, less burdensome on the court, save a great deal of judicial time, permit resolution of the dispute within a very short period of time, and permit the aggrieved party to obtain attorney fees and costs which would not otherwise be available." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 1905 (1989–1990 Reg. Sess.) July 18, 1989.)

■ Contrary to Hixson's argument on appeal, nothing on the face of the statute or its history suggests that discovery on an order to show cause under section 2556 should be treated differently than discovery permitted in any other proceeding under the family law. The terms of the statute contain no express restriction on, or reference to, discovery. Given the statute's origins in the prior practice of requiring a separate civil action be initiated, where fairly unrestricted discovery would have been available, we would expect that had the Legislature intended to impose strict limits on discovery, those limits would have been set forth on the face of the statute or in some other manner expressed in the legislative history. Although there is reference in the history to convenience and efficiency, those general references, in light of the prior practice, do not persuade us that the Legislature intended that a section 2556 proceeding be treated any differently than other family law matters.

■ Our conclusion that any limitation on discovery in section 2556 proceedings would have been expressed rather than left implied is consistent · with our Supreme Court's recognition that family law litigants are entitled to all the discovery provided by the Civil Discovery Act, Code of Civil Procedure section 2016 et seq., and that the right to discover community assets is of particular importance. (See, e.g., *Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 711 [21 Cal.Rptr.2d 200, 854 P.2d 1117].) " 'Under the discovery statutes, information is discoverable if it is unprivileged and is either relevant to the subject matter of the action or reasonably calculated to reveal admissible evidence.' [Citations.] At the outset, we note that information about the value of community assets and the parties' financial status is clearly relevant to the spouse's interests in obtaining a fair division of those assets and fair attorney fee and spousal support (and, in other cases, child support) awards. Moreover, at least as to a division of assets and child and spousal support awards, those interests are strongly protected by California law." (*Ibid.*)

■ However, contrary to Breeden's contention on appeal, the right to discovery in civil proceedings is not absolute. "Cal. Civ. Proc. Code section 2019, subdivision (b), provides generally that any discovery method, including depositions, may be restricted in the frequency or extent of its use if the trial court determines either that '(1) The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive' or '(2) The selected method of discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, and the importance of the issues at stake in the litigation.' " (*People v. Superior Court* (*Cheek*) (2001) 94 Cal.App.4th 980, 992 [114 Cal.Rptr.2d 760] (*Cheek*).)

In *Cheek* the court found that while the subject of a petition under the Sexually Violent Predators Act (SVPA), Welfare and Institutions Code

section 6600 et seq., was entitled to discovery under the Civil Discovery Act, the scope of permissible discovery was limited by the narrow issues considered in an SVPA proceeding and the need for expeditious adjudication. (*Cheek, supra*, 94 Cal.App.4th at pp. 990–991.) The court also emphasized a trial court's power to manage discovery in an SVPA proceeding must be considered "on a case-by-case basis. For example, the trial court may take into account that in some cases expert witness testimony will have been elicited before trial, because the SVPA provides pretrial opportunities to call and cross-examine experts and other witnesses at the probable cause hearing [citations] and at the annual show cause hearing to review the mental status of committed persons. [Citations.]" (*Id.* at p. 994.)

There are obvious and dramatic differences between an SVPA proceeding and an order to show cause under the provisions of section 2556. ■ However, *Cheek* is nonetheless helpful in recognizing that a trial court has the power to confine discovery to the issues raised in particular proceedings and that a trial court must exercise its management authority on a case-by-case basis. Thus, in a proceeding under section 2556 a party, such as Hixson, may obtain an order limiting or even preventing discovery if the proposed discovery exceeds the scope of the statute or is unnecessary under all the circumstances presented. Such a restriction on discovery, like other discovery orders, is subject to review for abuse of discretion. (See *Cheek, supra,* 94 Cal.App.4th at p. 987.)[2]

## II

■ The clearest limitation on the scope of any discovery under section 2556 is the nature of the assets over which the family court may exercise jurisdiction. Not only by its express terms, but also by virtue of the doctrines of res judicata and collateral estoppel, the family court's power under section 2556 is limited to assets which have not been previously adjudicated. The family court's power is also limited to community property and community liabilities; the statute gives the court no power to make an award with respect to a party's separate property or separate liabilities. Thus a family court can prevent discovery which is directed solely toward assets or liabilities which have already been adjudicated or are clearly the separate property or liability of one of the parties.

In addition to the substantive limitations on the kinds of property and liability that may be considered under section 2556, there are obvious practical considerations which will govern the manner in which a

---

[2] "Thus, where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court. [Citation.]" (*Cheek, supra,* 94 Cal.App.4th at p. 987.)

section 2556 claim is litigated. Because section 2556 provides a postjudgment remedy, there will always be an existing record of prior dissolution proceedings. Sometimes, as is the case here, that record will be fairly exhaustive; in other instances the record may be somewhat limited. Plainly, where a thorough record exists, extensive new discovery on many issues may not be necessary.

■ In considering any objection to discovery, the family court must also, of course, consider the nature of a moving party's allegations and any defenses which have been asserted. Where the principal controversy between the parties is whether the subject assets or liability have been previously adjudicated, the need to manage discovery to avoid unnecessary duplication may be more pronounced. On the other hand where the parties' principal dispute is whether the subject property is community property or there is a community liability, more discovery might be needed with respect to the circumstances under which the subject asset or liability was acquired.

The foregoing considerations are by no means exhaustive and in particular cases additional circumstances will bear upon the family court's control over discovery. Nonetheless with these considerations in mind, we turn to the family court's order in this case.

## III

### A. *Amgen Stock*

Although neither party presented any evidence from a representative of the securities broker which maintained the trust's stock portfolio, the record at the hearing (principally Hixson's declaration) supports the trial court's determination that no further discovery with respect to the trust's stock transactions was necessary.

In seeking to prevent further discovery, Hixson argued that all of the marital community's stock and Amgen shares had been adjudicated. In support of his argument, Hixson relied on the exhaustive record which had been developed prior to entry of the stipulated judgments. The record in particular included exhibits A and B to the stipulated judgment entered on January 27, 1997. On their face exhibits A and B account in some detail for the community's securities, including its stock holdings, including its Amgen shares. Because exhibits A and B were developed after Breeden conducted extensive discovery with respect to the marital community's assets, and because Breeden was represented by counsel at the time the stipulated judgment was entered into, the family court acted well within its discretion in requiring that Breeden make some showing which would impeach them.

■ Although section 2556 permits a spouse to seek a division of unadjudicated community assets, it does not, as Breeden seems to suggest, permit the family court to simply ignore the previously developed record and the inferences which can be reasonably be drawn from that record. In managing discovery under section 2556, considerations of simple fairness to the responding spouse, as well as obvious judicial economy, permit a court to rely on the prior record until the moving party has made some showing which either undermines that record or demonstrates that the record does not resolve the claim being asserted.

Breeden failed to present any evidence or even any argument which would undermine exhibit A as a division of the party's substantial securities, including its Amgen shares. As Hixson pointed out, in relying on records from the parties' brokerage account, which records were available and examined by Breeden's counsel at the time exhibits A and B were developed, Breeden failed to recognize that with respect to each share "delivered" to the parties' brokerage account there was a corresponding share "received" and also failed to deduct the cost the marital community incurred in exercising Amgen stock options. In short, in light of the record presented, the family court did not abuse its discretion in preventing unnecessary discovery with respect to the parties' Amgen stock.

## B. *Limited Partnership*

As indicated, while they were married Hixson and Breeden invested in limited partnerships offered by a venture capital firm, Kleiner Perkins Caufield & Byer (KPCB) and held those investments in the family trust. The January 27, 1997, stipulated judgment distributed to each party one-half of the trust's interest in those investments as well as one-half of any future distributions made by the limited partnerships to the trust.

By July 1997 Hixson had remarried and at that time KPCB offered him the opportunity to invest in a new limited partnership. In her order to show cause Breeden alleged that, in light of the community's prior investments in KPCB, Hixson should have shared the July 1997 opportunity with her. However, as Hixson points out, Hixson's duty to share KPCB investment opportunities expired when the community's KPCB investments were distributed. (§ 2102, subd. (a); see also *Brown v. Brown* (1915) 170 Cal. 1, 7 [147 P. 1168].) We have not been directed to any authority, and have found none, which creates any duty of disclosure with respect to property which has been distributed as separate property. ■ A duty to share business opportunities following separation is only imposed with respect to property which has not been distributed as separate property or otherwise adjudicated. (See § 2102, subd. (a); *Lewis v. Superior Court* (1978) 77 Cal.App.3d 844, 851 [144

Cal.Rptr. 1] [unadjudicated assets subject to jurisdiction of court].) Thus, there was no basis upon which Breeden could assert any interest in the new partnership and no need to subject Hixson or the venture capital firm to discovery with respect to it.

## IV

Because Breeden failed to demonstrate that there were any unadjudicated assets or opportunities, the trial court did not err in denying her relief on her order to show cause.

Orders affirmed. This court's order staying proceedings in the trial court is vacated.

McIntyre, J., and Aaron, J., concurred.

A petition for a rehearing was denied September 24, 2003, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 22, 2004.