[No. C047305. Third Dist. Nov. 15, 2006.]

In re the Marriage of CONSTANCE P. and CHARLES A. LENI.
CONSTANCE P. LENI, Respondent, v.
CHARLES A. LENI, Appellant.

**COUNSEL**

Herman Franck for Appellant.

Franklin W. King for Respondent.

**OPINION**

**RAYE, J.**—During the 17 years it took the Lenis to end their 25-year marriage, they sold one house, split the proceeds, and bought another one. Charles A. Leni (Husband) appeals the judgments, contending that Constance P. Leni (Wife) breached a fiduciary duty by refusing to sell him the second house in 1996.[1] He also argues the trial court erred by characterizing

---

[1] Some of the issues were tried and the initial judgment was entered May 11, 2004. Following a second trial, another judgment was entered December 13, 2004. We granted Husband's motion to consolidate the appeals of both judgments.

the proceeds of the sale of the first house as community property and, as a result, compelling him to reimburse the community for the proceeds he used to take care of his mother. We reverse in part.

## FACTS

The parties were married in 1977. Eight years later they separated, and Wife filed her first petition for dissolution of the marriage. During the separation, they sold their house and the escrow instructions provided, "proceeds to be split 50/50." Prior to the close of escrow, however, the parties reconciled and dismissed the petition. Nevertheless, the escrow instructions were never amended, and therefore the sales proceeds were disbursed following their reconciliation in equal shares to each of them.

In 1992 Wife again filed for divorce. In December Husband agreed to vacate the house, and they both agreed the monthly fair market rental value of the house was $1,050. Three years later they decided to sell the house. Wife agreed to a purchase offer of $147,500, but Husband refused to accept the offer. Later that year he told Wife he wanted to purchase the house. He documented that desire as a notation on many of his support checks. At the time of the eventual trial of the dissolution in 2003, Wife continued to reside in the house.

The trial court ruled that Wife did not have a fiduciary duty to sell the house to Husband in 1996 even though she was willing to sell it to a third party. The court also ruled that the notation in the escrow instructions to split the proceeds of the sale did not constitute a valid written transmutation of community property to Husband's separate property. Because he spent community funds to satisfy his personal obligation to care for his mother, the court ordered Husband to make an equalizing payment to Wife of $12,000. Husband appeals.

## DISCUSSION

### I

No one disputes that in managing community property, spouses have fiduciary duties to each other. (Fam. Code, §§ 721, 1100; *In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 992 [80 Cal.Rptr.2d 699].) Family Code section 721, subdivision (b)[2] provides, in pertinent part, that "a husband

---

[2] All further statutory references are to the Family Code unless otherwise indicated.

and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections 16403, 16404, and 16503 of the Corporations Code . . . ."

Husband asserts the far-fetched notion that the incorporation of these sections of the Corporations Code imposes on a spouse all the duties and obligations of an officer or director of a corporation. Husband conceded at trial that he had no cases to support his novel construction of the statute. The court rejected his expansive definition of a fiduciary duty to compel a spouse, after separation and in the absence of a contract, to give the other spouse a right to first refusal on the sale of a community asset.

Although Husband's precise legal theory is hard to identify, we reject an expansion of a spouse's fiduciary duties beyond the Family Code and, in particular, to encompass the entire Corporations Code. Neither the statute nor the case upon which Husband now relies supports an implied-in-law right of first refusal to a community asset.

Husband fails to notice the express language of Family Code section 721, subdivision (b), wherein the Legislature explicitly defines the rights and duties of spouses that are analogous to those of nonmarital business partners. Each subsection parallels the section of the Corporations Code with a comparable duty. For example, Family Code section 721, subdivision (b)(1) requires each spouse to provide access "at all times to any books kept regarding a transaction for the purposes of inspection and copying" just as Corporations Code section 16403 gives a partner the right to have access to, inspect, and copy books of the account. Similarly, Family Code section 721, subdivision (b)(2) provides that each spouse must render, upon request, "true and full information of all things affecting any transaction which concerns the community property" in the same way Corporations Code section 16403, subdivision (c)(1) confers the right of disclosure, on demand, of information regarding the partnership business. And finally, Family Code section 721, subdivision (b)(3) mimics Corporations Code section 16404 by requiring an "[a]ccounting to the spouse, and holding as a trustee, any benefit or profit derived from any transaction by one spouse without the consent of the other spouse which concerns the community property." Similarly, Corporations Code section 16404 requires accounting for the benefits or profits derived from a partnership or benefits derived by a partner's use of partnership property. Thus, the reference to these discrete sections in the Corporations

Code by no means broadens a spouse's duties and obligations to include those of officers and directors of a corporation beyond providing access, information, and an accounting.

Husband does not accuse Wife of failing to provide him access to any books and records, to provide him information upon request, or to provide him an accounting. Since Wife never sold the house, there simply was nothing to account. But extrapolating far beyond the words of the statute, Husband insists that once Wife evidenced a willingness to sell the house in 1996 to a third party, she had a fiduciary obligation under the Corporations Code to sell it to him for the same price. As the court pointed out, however, he failed to assert his claim in any family law proceeding at the time and waited until 2003 to argue that he was entitled to the house at the price Wife had been willing to sell it in 1996 before he refused to complete the sale.

Husband argues that he did not forfeit his right to the house by failing to assert it more forcefully. His behavior, one way or the other, begs the threshold question whether Wife had a fiduciary duty to give Husband a right of first refusal on the house in the absence of a contract to do so. Although Husband conceded at trial the parties had not entered into a contract according him any right of first refusal, he argues on appeal that the trial court precluded him from putting on evidence to demonstrate that Wife had breached a fiduciary duty. It is not clear that he was precluded from introducing evidence during the trial. In any event, the evidence is irrelevant because, as he seems to appreciate, the existence of the kind of fiduciary duty he proposes is a question of law. He had ample opportunity to make an offer of proof, and based on that offer, the court properly ruled Wife had no fiduciary duty as a matter of law. We review the court's ruling de novo. Husband's obstacle is not the scope of appellate review or the quality or quantum of evidence, but the absence of legal grounds to support his contention.

Relying on *In re Marriage of Duffy* (2001) 91 Cal.App.4th 923 [111 Cal.Rptr.2d 160] (*Duffy*), Husband claims, "Family law proceedings look to California Corporate law for the substantive rules of fiduciary duties." (See *id.* at p. 930.) With corporate law as his platform, he leaps to the conclusion that the sale of the house constituted a "corporate opportunity," and pursuant to the corporate opportunity doctrine, Wife was obligated to give him the right of first refusal on the house. Wife points out that even if the corporate opportunity doctrine applied, her duty would have been to the corporation or, by analogy, to the community and not to Husband personally. Since she retained the house, she did nothing in derogation of the rights of the

community. Rather, as Wife argues, she merely preserved it for the benefit of the community.

*Duffy, supra,* 91 Cal.App.4th 923, does not stand for the wholesale proposition suggested by Husband that the fiduciary duties of spouses are defined in the Corporations Code.[3] The court in *Duffy* discussed the sections of the Corporations Code expressly identified in Family Code section 721, subdivision (b). We reject Husband's attempt to read far more into the case and the statute than either the court or the Legislature could have possibly intended.

■ The Family Code itself describes the duty of a spouse during separation to give notice of a business or investment opportunity arising as a result of community investments. "The accurate and complete written disclosure of any investment opportunity, business opportunity, or other income-producing opportunity that presents itself after the date of separation, but that results from any investment, significant business activity outside the ordinary course of business, or other income-producing opportunity of either spouse from the date of marriage to the date of separation, inclusive. The written disclosure shall be made in sufficient time for the other spouse to make an informed decision as to whether he or she desires to participate in the investment opportunity, business, or other potential income-producing opportunity, and for the court to resolve any dispute regarding the right of the other spouse to participate in the opportunity. In the event of nondisclosure of an investment opportunity, the division of any gain resulting from that opportunity is governed by the standard provided in Section 2556." (§ 2102, subd. (a)(2).)

*In re Marriage of Hixson* (2003) 111 Cal.App.4th 1116 [4 Cal.Rptr.3d 483] (*Hixson*) does not allow a spouse to recover on a corporate opportunity theory as Husband asserts. In fact, the court rejected the wife's argument that her estranged husband had the duty to share an investment opportunity after the community's investments had been distributed. The court wrote, "We have not been directed to any authority, and have found none, which creates any duty of disclosure with respect to property which has been distributed as separate property." (*Id.* at p. 1125.) Citing section 2102, the court explained that "[a] duty to share business opportunities following separation is only imposed with respect to property which has not been distributed as separate property or otherwise adjudicated." (*Hixson, supra,* 111 Cal.App.4th at p. 1125.)

---

[3] Indeed, the court in *Duffy* declined to expand the scope of the fiduciary duty set forth in Family Code section 721 beyond the specifically enumerated sections of the Corporations Code. While the Legislature later amended section 721 with the intent of abrogating portions of the *Duffy* decision, the amendments do not assist Husband. (See *In re Marriage of Walker* (2006) 138 Cal.App.4th 1408, 1425 [42 Cal.Rptr.3d 325].)

Husband did not argue at trial that Wife violated section 2102, but he quotes the statute in his reply brief without explaining how its terms apply here. They do not. Wife did not fail to disclose or hide an investment opportunity from Husband to share. Indeed, she kept the house on behalf of the community and he ultimately shared in the appreciation of its value. Since the Family Code ensures that spouses cannot be excluded from opportunities arising out of community investments, there is no need or room for husband's corporate opportunity theory imported from the Corporations Code.

In *d'Elia v. d'Elia* (1997) 58 Cal.App.4th 415 [68 Cal.Rptr.2d 324] (*d'Elia*), the Fourth District Court of Appeal rejected a similar attempt to sidestep the Family Code by applying securities fraud laws to marital settlement agreements. The court concluded: "Here the defendant spouse's duties of disclosure on which the plaintiff predicated her securities fraud case arose out of the *family* law, not the securities law, and it is therefore unfair to allow the plaintiff to assert a *securities* claim based on family-law-imposed duties of disclosure." (*Id.* at p. 419.) Similarly, Wife's fiduciary duties to Husband arose under the family law, and were described and defined in the Family Code. As the court explained in *d'Elia*, it would be both inappropriate and unwise to enlarge a family law claim under the Family Code to include business rights and responsibilities of an entirely different nature.

## II

Husband next insists that the proceeds from the sale of the parties' house in 1986 were transmuted from community to separate property and therefore he was free to help his mother with the separate property he received from the sale. While we shall conclude the trial court erred in concluding that community property cannot be applied to the support of a spouse's needy parent, the court correctly applied the law governing transmutation of community property.

In 1985 the Legislature foreclosed spouses from orally changing the character of their property. Family Code section 852 requires not only a writing, but a writing that contains "an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." Civil Code former section 5110.730, subdivision (a), the predecessor to Family Code section 852, "was intended to remedy problems which arose when courts found transmutations on the basis of evidence the Legislature considered unreliable." (*Estate of MacDonald* (1990) 51 Cal.3d 262, 269 [272 Cal.Rptr. 153, 794 P.2d 911] (*MacDonald*).) To effectuate the legislative intent in changing the law of spousal transmutation of property, the Supreme Court concluded that "a writing signed by the

adversely affected spouse is not an 'express declaration' for the purposes of section [852] *unless* it contains language which expressly states that the characterization or ownership of the property is being changed." (*MacDonald, supra,* 51 Cal.3d at p. 272.)

"The determination whether the language of a writing purporting to transmute property meets the *MacDonald* test must be made by reference to the writing itself, without resort to parol evidence. [Citation.] As a matter of interpretation of written documents, the determination is subject to independent review by this court." (*In re Marriage of Barneson* (1999) 69 Cal.App.4th 583, 588 [81 Cal.Rptr.2d 726].)

Husband asserts that the escrow instructions constitute a sufficient written declaration of Wife's intent to transmute the community proceeds of the sale of the house to become separate property. As noted above, the instructions stated that the proceeds were to be split "50/50." Husband urges us to apply the plain meaning of the 50/50 split. But our task is not to divine the parties' intent from the writing; we must determine whether the writing satisfies the statute. It does not. The notation in the escrow instructions does not satisfy the rigid requirements set forth in section 852 because there is no express declaration that the character of the property is being changed. In the absence of any other "special writing expressly changing the character of the disputed property," Husband's argument must fail. (*In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1100 [32 Cal.Rptr.3d 471, 116 P.3d 1152].) That deficiency precludes resort to the escrow instructions as a basis for transmutation of the property.

Additionally, we note that by the time escrow closed the parties had reconciled and their divorce action had been dismissed. In these circumstances, the parties' conduct, coupled with the escrow instructions, is precisely the kind of ambiguous parol evidence the legislation precludes the courts from considering.

## III

Although Husband fails to establish that the proceeds from the house sale were transmuted from community to separate property, he succeeds in developing a claim that the trial court erred in treating expenditures on behalf of his infirm mother as an unauthorized gift of community funds. Husband argues at some length that he was under a legal and moral obligation to support his infirm mother. In his view, his expenditures cannot be considered

an unauthorized gift of community funds because he was obligated to provide for her care.[4] Husband's counsel presented the same argument at trial—that Husband used the funds for his ailing mother and represented that "[w]e could actually trace the funds out there, that he sent it out there," but the trial court disagreed. Responding to Husband's argument that section 4400 imposed a duty of support, the trial court declared, "Well, that doesn't mean the community is obligated to support a person." The court lectured counsel, "You know as well as I do that you're under no obligation to pay for your parent's expenses just as you're under no legal obligation to pay for your child's expenses once they are over the age of eighteen." The court ordered him to make an equalizing payment to Wife for the community funds he used to satisfy his separate obligation. The trial court is incorrect.

Though not commonly known, California is one of many states that have enacted filial responsibility laws imposing on adult children obligations of support akin to those imposed on parents with respect to minor children. (See generally Britton, *America's Best Kept Secret: An Adult Child's Duty to Support Aged Parents* (1990) 26 Cal. Western L.Rev. 351.) The obligation is set forth in section 4400.[5] Neglect of an indigent parent is punishable as a misdemeanor.[6]

While the trial court precluded Husband from developing his claim, there can be no quarrel with Husband's assertion that, under prescribed circumstances, he would have been obligated to support an ailing mother.[7] The next question raised by the trial court's ruling is whether the expenditure of community funds without Wife's consent to satisfy Husband's obligation constitutes an unauthorized gift. It does not.

---

[4] Section 1100, subdivision (b) provides that "A spouse may not make a gift of community personal property, or dispose of community personal property for less than fair and reasonable value, without the written consent of the other spouse. This subdivision does not apply to gifts mutually given by both spouses to third parties and to gifts given by one spouse to the other spouse."

[5] Section 4400 provides: "Except as otherwise provided by law, an adult child shall, to the extent of his or her ability, support a parent who is in need and unable to maintain himself or herself by work."

[6] Penal Code section 270c provides: "Except as provided in Chapter 2 (commencing with Section 4410) of Part 4 of Division 9 of the Family Code [providing for relief from duty to support a parent who abandoned a child], every adult child who, having the ability so to do, fails to provide necessary food, clothing, shelter, or medical attendance for an indigent parent, is guilty of a misdemeanor."

[7] We reject Wife's assertion in her supplemental letter brief that Husband failed to offer evidence sufficient to establish a payment obligation to his mother. The trial court proceedings were conducted informally; formal offers of proof were not required. Husband's counsel represented, in effect, that he could establish the expenditures were made pursuant to Husband's statutory obligation. Moreover, any offer of proof would have been to no avail given the trial court's legal ruling.

■ Section 910 provides: "(a) Except as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt. [¶] (b) 'During marriage' for purposes of this section does not include the period during which the spouses are living separate and apart before a judgment of dissolution of marriage or legal separation of the parties." "Debt" is defined by section 902 as "an obligation incurred by a married person before or during marriage, whether based on contract, tort, or otherwise." In our view, an obligation imposed by statute is a "debt" within the meaning of section 910.

Husband's support obligation, if any existed, was not Husband's alone. It was a community obligation. It cannot be plausibly argued that payment of a community obligation constitutes an unauthorized gift.

■ There remains the question, not explored by the trial court, whether Husband is nonetheless obligated to reimburse the community for community funds expended in satisfaction of Husband's debt. The Family Code prescribes circumstances in which a spouse's obligation is payable by the community subject to the community's right of reimbursement. Thus, "If property in the community estate is applied to the satisfaction of a child or spousal support obligation of a married person that does not arise out of the marriage, at a time when nonexempt separate income of the person is available but is not applied to the satisfaction of the obligation, the community estate is entitled to reimbursement from the person in the amount of the separate income, not exceeding the property in the community estate so applied." (§ 915, subd. (b).) However, no similar statute applies to payment of support to an indigent parent, and we have been pointed to no other statute imposing a reimbursement obligation.

We also note that a spouse's debt payments may constitute a breach of fiduciary duty and run afoul of section 721, subdivision (b). That issue, however, is not raised in the parties' briefs.

■ We conclude the trial court erred in ordering Husband to reimburse the community for funds he alleged were used to take care of his mother. On remand, Husband is entitled to establish the funds were expended to support his mother, who was in need and unable to maintain herself.

## DISPOSITION

That portion of the judgment ordering Husband to reimburse Wife $12,000 in payment of her one-half community interest in the sale of their Santa Clara home is reversed and remanded for further proceedings in accordance with the views expressed herein. In all other respects the judgment is affirmed. The parties shall share costs on appeal. In light of our disposition, Wife's motion for sanctions based on the asserted frivolousness of the appeal is denied.

Nicholson, Acting P. J., and Robie, J., concurred.