Filed 1/4/16  Marriage of Bader CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| In re the Marriage of CAROL and WALT BADER. | C076489 |
| CAROL BADER, | (Super. Ct. No. FL06912) |
| Appellant, | |
| v. | |
| WALT BADER et al., | |
| Respondents. | |

Appellant Carol Bader and respondent Walt Bader[1] signed a marital settlement agreement (MSA) in which they agreed that their respective interests in two closely held companies were their separate property.  But this agreement and the trial court's subsequent entry of judgment did little to end the disagreements between the former

---

[1] Lifekind, Inc. ("Lifekind") and Organic Mattresses, Inc. ("OMI") are also respondents in this appeal.

1

spouses. Carol now appeals from an order after hearing on threshold legal issues regarding her motion to enforce the judgment and for various other forms of relief. Carol claims that the trial court erred in: (1) holding that, after entry of the judgment, Walt no longer owes her a fiduciary duty based on their marital relationship; (2) holding that the family court lacks jurisdiction to adjudicate fiduciary duty claims based on principles of corporate law applicable to the former spouses' separate property; and (3) denying her request for an order directing Walt to list and market the companies for sale. At the outset, respondents argue that Carol's appeal must be dismissed because the trial court's order was preliminary to later proceedings.

We conclude that Carol has properly appealed from a final order after judgment that is not preliminary to any future proceedings. However, we reject her substantive arguments. Because Walt and Carol confirmed their stock as their separate property, Walt no longer owed Carol a fiduciary duty based on their former marital relationship, and the family court has no jurisdiction over claims based in corporate law. Additionally, we conclude that an order requiring the listing and marketing of the companies would exceed the terms of the MSA. We shall affirm the trial court's order.

## I. BACKGROUND

Walt and Carol married in March 1996. They separated in January 2009. In December 2010, the trial court entered a judgment of dissolution as to status only. In May 2011, the court issued a judgment on reserved issues incorporating the MSA. In that document, the former spouses identified all their listed assets as separate property of either Walt or Carol. In particular, the MSA "[c]onfirmed to [Carol] as her sole and separate property the following items: . . . [¶] . . . [Carol] will retain her 40% ownership of Lifekind Inc, and corresponding ownership interest in OMI. The parties will cooperate in efforts to sell both corporations."

Likewise, Walt's 40 percent stake in Lifekind was confirmed to him as his separate property.

2

Approximately one year later the businesses had not been sold, and Carol filed a successful motion to join OMI and Lifekind as parties. Simultaneously, she moved to enforce the judgment, for attorneys' fees, to appoint a neutral forensic CPA and for various other relief. Relevant to this appeal, Carol alleged that Walt orchestrated the dilution of her interest in OMI by obtaining a stock option agreement that would give him a majority interest in the company, obstructed the sale of Lifekind and OMI, and breached his fiduciary duties related to the businesses. Carol requested numerous forms of relief, including that the trial court order the rescission of the stock option agreement, impose sanctions based on Walt's breaches of fiduciary duty, and "enforce the MSA by ordering the parties to cooperate in listing and marketing both OMI and Lifekind as soon as is reasonably practicable, and that it consider appointing a neutral referee or Special Master with authority to handle sale-related issues, in the event that Walt fails to cooperate with the Court's orders." Over time, the court denied and/or deferred additional requests from Carol, which are not central to this appeal.

The parties agreed that whether Walt had an ongoing fiduciary duty to Carol after judgment was a "threshold legal issue" that should be decided based on the parties' "legal briefing." The court ruled on this issue at a March 14, 2014, hearing and subsequently issued an order after hearing on May 13, 2014. The order made several determinations, including that there was no ongoing fiduciary duty arising from the former marital relationship between Walt and Carol after judgment. Additionally, "[w]hether [Walt] owes to [Carol] a fiduciary duty as president, COO or CEO of the businesses to its shareholders is a matter involving applicable corporate legal principles and is beyond the jurisdiction of this Court. Any issue of stock dilution after the execution of the MSA is likewise a corporate issue outside the jurisdiction of this Court." The trial court also held that the judgment did not authorize the court to order the sale of the businesses. "Such an order would change the material terms of the MSA and Judgment and further would be an order against people, shareholders and entities that were not parties to the action at the

3

time the MSA was executed." Nonetheless, the trial court determined that it did have "jurisdiction to enforce the terms and conditions of the Judgment by: (a) determining if each party has cooperated in the sale of the corporations." Accordingly, the trial court ordered that:

"1. To the extent [Carol]'s motion is premised upon a breach of fiduciary duty between spouses or former spouses post Judgment, the motion IS DENIED. Specifically:

"a. [Carol]'s request to enforce the Judgment by enjoining [Walt] from exercising a stock option diluting her interest in Organic Mattresses, Inc. and Lifekind, Inc., both Joined Parties herein, IS DENIED;

"b. [Carol]'s request to order that the corporations be listed for sale IS DENIED;

"c. [Carol]'s request to enjoin [Walt] from taking funds from the businesses over the amounts disclosed in an April 5, 2011, Income and Expense Declaration IS DENIED;

"d. [Carol]'s request to order [Walt] to pay fees for alleged post Judgment breaches of fiduciary duty and failure to disclose under Family Code [sections] 1101 and 2107 IS DENIED; [2]

"e. [Carol]'s request to order [Walt] to pay additional amounts related to the alleged nondisclosures IS DENIED;

"f. [Carol]'s request to enforce the MSA with respect to undoing [Walt]'s exercise of the stock option diluting her interest in the businesses IS DENIED."

The court "invite[d] further briefing by May 2, 2014, limited to the issue of what relief is available to enforce the Judgment provision requiring the parties to cooperate in efforts to sell the businesses, if it finds that good faith efforts to sell have not been made. Any further briefing on enforcement shall be due the same day as the hearing on Joined Parties' motion to dismiss, if any."

---

**2** Further undesignated statutory references are to the Family Code.

4

Carol responded to the trial court's request by filing a brief stating that the court "left itself no authority to do anything meaningful" to enforce the former spouses' agreement to cooperate in efforts to sell both corporations. Carol argued that if they could not agree to sell the companies, then "any specification of steps other than listing and marketing the businesses in an 'effort to sell' them likewise cannot be enforced." She contended that the trial court's "ruling thus effectively disposes of virtually the entirety of [Carol]'s motion to enforce the judgment (with the most notable exceptions being an unrelated issue of nondisclosure by [Walt] pre-judgment of his salary, bonuses and perquisites; and any request for fees made by the parties)." Respondents did not file any further briefing. Carol timely appealed the trial court's May 2014 order after hearing.

## II. DISCUSSION

### A. *Appealability*

Respondents purport to incorporate a "motion to dismiss" into their respondents' brief. However, a motion to dismiss an appeal must be made by a separate "written motion" (Cal. Rules of Court, rule 8.54(a)(1)) filed with the court and served on the opposing party, and the motion "must be accompanied by a memorandum and, if it is based on matters outside the record, by declarations or other supporting evidence." (Cal. Rules of Court, rule 8.54(a)(2).) Nonetheless, the trial court's May 2014 order is an appealable postjudgment order under Code of Civil Procedure section 904.1, subdivision (a)(2), because it is "not preliminary to future proceedings and will not become subject to appeal after a future judgment." (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 654.) While the trial court left open the option of conducting further proceedings to enforce the judgment, Carol effectively foreclosed this possibility by failing to identify any relief that would be available and informing the court that its ruling effectively disposed of her motion to enforce the judgment.

5

*B.  Standard of Review*

In considering whether the trial court correctly denied Carol's motion as a matter of law to the extent it was premised on breaches of fiduciary duty, we apply the de novo standard of review.  (See *In re Marriage of Leni* (2006) 144 Cal.App.4th 1087, 1093 [reviewing trial court's ruling that spouse had no fiduciary duty as a matter of law de novo].)  The parties do not cite to any extrinsic evidence offered to the trial court to aid in interpreting the MSA.  Accordingly, the interpretation of the MSA is also a question of law that we review de novo.  (See *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 ["It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence"].)

*C.  Walt No Longer Owes a Fiduciary Duty to Carol*

The fiduciary obligations of spouses to each other are set forth in section 721.  It provides, in pertinent part, "spouses are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other.  This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other.  This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections 16403, 16404, and 16503 of the Corporations Code."  (§ 721, subd. (b).)

These fiduciary duties extend throughout the dissolution proceedings but are not indefinite:  "From the date of separation to the date of the distribution of the community or quasi-community asset or liability in question, each party is subject to the standards provided in Section 721."  (§ 2102, subd. (a).)  The stock at issue in this action was distributed and ceased to be community property [3] when Carol agreed to confirm a 40

---

[3]  At various points, Carol contends that the businesses were originally community property despite the language in the MSA.  While this issue was not part of the trial

6

percent ownership interest "as her sole and separate property." (Cf. *Litke O'Farrell, LLC v. Tipton, supra,* 204 Cal.App.4th at p. 1181 [division of property occurred when parties signed MSA confirming assets as their sole and separate property].) At that point, the fiduciary obligations set forth in section 721 arising from Walt and Carol's former marital relationship no longer applied. The authorities cited by Carol involving community property that had yet to be distributed are inapplicable. (See, e.g., *Vai v. Bank of America Nat'l Trust & Sav. Asso.* (1961) 56 Cal.2d 329, 342 [holding husband's fiduciary relationship regarding wife's interest in community property continued during property settlement negations]; *In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 990, 996 [judgment awarded wife separate property interest of $122,000 in family home valued at around $500,000 and ordered the house to be sold; remanded for recalculation of loss to community based on wife's delayed sale].) The fact that the MSA contemplated that the separate property stock would later be liquidated is irrelevant. The stock—along with Walt's and Carol's other assets—had already been distributed within the meaning of section 2102.[4] Therefore, the trial court correctly ruled that Walt no longer owed Carol a fiduciary duty based on their marital relationship.

court's ruling and is unnecessary for us to resolve, we note that a trial court's only role with respect to a marital settlement agreement "is to accept the agreement and, if requested, incorporate the disposition into the judgment." (*Litke O'Farrell, LLC v. Tipton* (2012) 204 Cal.App.4th 1178, 1184.) For these reasons, we must reject Carol's argument that there is no equal division of the property. Carol's motion to *enforce* the judgment in the trial court did not argue that the judgment should be set aside for any reason, and her agreement is binding for purposes of this appeal. (See *Mejia v. Reed* (2003) 31 Cal.4th 657, 666 ["Whenever, as in this case, the parties agree upon the property division, no law requires them to divide the property equally, and the court does not scrutinize the MSA to ensure that it sets out an equal division"].) Section 2550, which requires the court to divide community property equally, contains an exception for "written agreement[s] of the parties," and thus does not apply to property divisions in marital settlement agreements. (See *Mejia v. Reed*, *supra*, 31 Cal.4th at p. 666.)

[4] The result is the same under section 2102, subdivision (b), which provides that "[f]rom the date that a valid, enforceable, and binding resolution of the disposition of the asset or

7

*D. Jurisdiction Over Carol's Corporate Law Allegations*

The superior court's jurisdiction in domestic relations cases is limited: "A party in a family law proceeding may only ask that the court make orders against or involving the other party, or any other person, that are available to the party in these rules, Family Code sections 17400, 17402, and 17404, or other sections of the California Family Code." (Cal. Rules of Court, rule 5.17.) As set forth above, section 721, and the Corporations Code sections incorporated therein, no longer apply once the community assets have been distributed. Therefore, the trial court no longer has jurisdiction to consider whether Walt breached Corporations Code section 16404 or any other corporate principles. (See *Sosnick v. Sosnick* (1999) 71 Cal.App.4th 1335, 1339 [jurisdiction of superior court in dissolution action is limited by Rules of Court and Family Code].)

Furthermore, "it is well settled in California that the court's jurisdiction over the parties' separate property is quite limited." (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 810.) "The court may *characterize* disputed assets and liabilities as being separate or community, may *confirm* separate property to the owner spouse and, to the extent permitted by statute, may order *reimbursement* from the community to a party's separate estate or to the community from a party's separate estate. . . . But unless the parties otherwise agree, the court's jurisdiction over *separate property* ordinarily extends no further. . . . To obtain other relief affecting separate property interests, an

---

liability in question is reached, until the asset or liability has actually been distributed, each party is subject to the standards provided in Section 721 as to all activities that affect the assets or liabilities of the other party. Once a particular asset or liability has been distributed, the duties and standards set forth in Section 721 shall end as to that asset or liability." Carol relied on this subdivision for the first time at oral argument. " 'It is a clearly understood principle of appellate review, so well established as to need no citation to authority, that contentions raised for the first time at oral argument are disfavored and may be rejected solely on the ground of their untimeliness.' [Citation.]" (*Estate of McDaniel* (2008) 161 Cal.App.4th 458, 463.) Nonetheless, the MSA provided that the parties would "retain" their shares. Under these circumstances, nothing more was required to "actually" distribute them.

*independent civil action* must be filed." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2015) ¶ 8:903, pp. 8-310 to 8-311, italics in original.) Here, Carol and Walt entered into the MSA confirming their stock holdings as separate property. As a result, Carol's allegations based solely on the applicability of corporate principles to her separate property require the filing of a separate civil action.

Carol claims that her bringing a separate shareholder's suit would be disfavored under *Neal v. Superior Court* (2001) 90 Cal.App.4th 22. But this line of cases only applies to prevent "reruns of a family law case" in separate litigation. (*Neal v. Superior Court*, *supra*, 90 Cal.App.4th at p. 25.) Allegations of share dilution are not fairly characterized as "reruns of a family law case."

Carol also contends that because her motion for joinder was granted, the family court has jurisdiction over claims related to the companies. The statute and California Rule of Court she cites, however, merely provide for the joinder of individuals with an interest in the proceedings. (§ 2021, subd. (a) ["[T]he court may order that a person who claims an interest in the proceeding be joined as a party to the proceeding]; Cal. Rules of Court, rule 5.24 ["A person who claims or controls an interest in any matter subject to disposition in the proceeding may be joined as a party to the family law case only as provided in this chapter"].) They do not confer jurisdiction over claims or expand the permissible scope of the proceedings.

## E. The Trial Court May Not Order Walt to List and Market the Businesses for Sale

Carol concedes the trial court is correct that it cannot order the sale of the businesses. Moreover, she does not appeal most of her original request that the trial court "enforce the MSA by ordering the parties to cooperate in listing and marketing both OMI and Lifekind as soon as is reasonably practicable, and that it consider appointing a neutral referee or Special Master with authority to handle sale-related issues, in the event that [Walt] fails to cooperate with the Court's orders." Whether Walt has cooperated in the

9

sale of the businesses remains a disputed factual issue that was never adjudicated. And perhaps to ensure that the trial court's order is appealable, Carol has abandoned her request to order cooperation beyond requiring the parties to list and market the businesses. Consequently, Carol requests that we "find that the lower court has the authority to enforce the judgment by ordering Walt to list and market the businesses for sale." But an order requiring the listing and marketing of the companies is tantamount to an order requiring the sale of the companies—and both exceed the terms of the MSA.

Marital settlement agreements incorporated into a judgment of dissolution are interpreted under the statutory rules governing the interpretation of contracts. (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439.) The MSA requires only that "[t]he parties will cooperate in efforts to sell both corporations." While other provisions of the MSA set forth actions that must occur when or until the businesses are sold, nowhere does the agreement require the businesses to be sold. Thus, the MSA does not say how the companies will be sold or under what circumstances, or what steps are required of each of the former spouses other than "to cooperate." Should the companies be marketed and listed after the cloud of divorce proceedings has lifted?[5] What are the mechanics for initiating a sale? The fact is that Carol and Walt agreed to walk away from the proceedings with equal amounts of stock but no definitive plans for selling the companies and liquidating the stock, and no specific obligations other than to "cooperate in efforts to sell both corporations." To hold that the trial court may order the listing and marketing of the businesses for sale now "would substantially alter the agreement

---

[5] Carol argues that since the MSA did not specify the timing for a sale, we must infer a "reasonable time" under Civil Code section 1657. But this statute only applies to "the performance of an act *required* to be performed." (Civ. Code, § 1657, italics added.) And even if the judgment were construed to require sale of the companies, what constitutes a reasonable time for a party to perform its obligations under a contract is ordinarily a question of fact. (*Kotler v. PacifiCare of California* (2005) 125 Cal.App.4th 950, 956.) Here, there is no factual record for us to review.

reached by the parties as clearly and explicitly stated in the judgment. This we cannot do." (*Id.* at p. 1440.)

## III. DISPOSITION

The order is affirmed.[6] Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/S/

_____

RENNER, J.


We concur:


/S/

_____

BUTZ, Acting P. J.


/S/

_____

MAURO, J.

_____

[6] Respondents filed a motion requesting that we take judicial notice of information regarding the companies found on Lifekind's website. Carol opposed the request. We deferred ruling on the request for judicial notice and now deny it, without reaching the merits, on the ground that it is immaterial to our conclusion on appeal. Carol also filed a motion to strike respondents' appendix on the ground that it contained evidence that was not necessary for resolution of the issues on appeal. (Cal. Rules of Court, rule 8.124(b)(3)(A).) Respondents opposed the motion. Because we did not rely on any of the evidence contained in respondents' appendix, we deny Carol's motion as moot.