Filed 6/1/21  Marriage of Orr and Traina CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Marriage of WILLIAM ORR and VALERIE TRAINA. | H046090 (Santa Cruz County Super. Ct. No. 16FL01751) |
| WILLIAM ORR, Appellant, v. VALERIE TRAINA, Respondent. | |

Appellant William Orr (husband) filed a petition for dissolution of marriage from respondent Valerie Traina (wife).  The parties negotiated and executed a marital settlement agreement (MSA), which was incorporated into the judgment of dissolution.  Several months after judgment was entered, husband filed a request for order (RFO) seeking division of "undivided and undisclosed assets," a change of venue, and an award of attorney fees.  Husband also propounded discovery on wife seeking information relating to the allegedly "undivided and undisclosed assets."  The trial court dismissed husband's RFO, entered a protective order in favor of wife barring further discovery, and further imposed $4,500 in sanctions against husband pursuant to Family Code section 271.[1]

---

[1] Unspecified statutory references are to the Family Code.

On appeal, husband argues: (1) the trial court was required under the terms of the MSA to hear his RFO on the issue of "undivided and undisclosed assets"; (2) the trial court was obliged to exercise continuing jurisdiction over the division of assets because the marriage was of long duration; (3) the trial court abused its discretion by entering a protective order on discovery; (4) the trial court lacked jurisdiction to impose sanctions on him under section 271; and (5) the trial court was required to grant his change of venue motion as a matter of law.

For the reasons explained below, we reject husband's arguments relating to the dismissal of his RFO, the protective order barring further discovery, and the denial of his motion for change of venue. We will modify the order to strike the award of sanctions pursuant to section 271 without prejudice to further properly noticed proceedings in the trial court. As modified, we will affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Petition for Dissolution

Husband and wife were married in August 1984. Husband petitioned for dissolution of his marriage to wife on December 6, 2016. In his petition for dissolution, husband requested attorney fees from wife and submitted a declaration stating that wife has, among other assets, a "horse farm" worth approximately "[$]1,700,000." Husband further noted that "[t]here are . . . approx[imately] 35 horses maintained [on the farm,] [and] [s]ome of the horse[s] are worth $100,000 each."

In her responsive declaration, wife disputed husband's valuation of the horse farm, stating that it was "worth about $475,000 after deducting the mortgage." With respect to the horses themselves, wife wrote: "Many of the horses are retired and worth nothing. The horses who may potentially have value are young and require a great financial investment to get them to the point where they have value."

2

Prior to the court ruling on husband's request for attorney fees, the parties agreed that he could withdraw $10,000 from community funds for that purpose, subject to reallocation at a later date.

Husband subsequently sought an ex parte order giving him control over the horse farm and the horses. In support of that request, husband stated that wife was "listing [the community property farm house] for a price significantly less than what it should be sold for" and has "moved some of the more expensive horses off site and not disclosed their specific locations" to him. Husband asked that the court order "[i]mmediate liquidation of the community livestock located at the . . . farm" with the proceeds of that liquidation to be held in a joint account.

Wife opposed husband's request, noting that the issue of dividing the horse farm was already set for an evidentiary hearing so there was no basis for an emergency order of liquidation. Wife said she had moved some of the horses "in the ordinary course of business, for training purposes . . . or for use by instructors in teaching their students to ride." The trainers "board and care for the horses" resulting in a savings to the community. She wanted an opportunity to purchase the horses and suggested a "public auction at which [she could] bid along with other buyers." Wife acknowledged that she and husband disagreed on the value of the horses; her position was that "most . . . have no value" but husband "insist[ed] that they have great value." She noted that husband could have the horses appraised but such an appraisal would "cost a great deal of money."

The parties again resolved the matter by stipulation in which they agreed that each of them could withdraw $25,000 from a joint account. Wife was authorized to pay expenses for the farm and horse breeding business from that same account but she had to provide a monthly accounting to husband of all such expenses.

## B. *Wife's February 2017 Deposition*

At her deposition, wife was questioned at length about the horse farm and the horses she owned. During that deposition, she testified that perhaps eight (of 34)[2] horses had a value of as little as $5. In that same deposition, she discussed several other horses under her care and provided an estimate of each horse's value. Two of those horses were, in wife's opinion, worth perhaps $30,000. When husband's counsel asked her to identify her "most expensive horse," wife said that she was trying to sell a horse named Sagar for $75,000 but he was not "moving at" that price. Her second most valuable horse, Emyr, had recently been marketed in Los Angeles for $75,000 to $100,000, but did not sell. Wife believed that Emyr was worth probably $50,000.

## C. *Judicial Mediation and Execution of the MSA*

Wife's judicial mediation statement, filed on April 12, 2017, contained the following information relating to her assets: "Horse breeding business located on the Los Banos property which owns 17 horses, most of which have no value. The three most expensive horses were listed for sale at $70,000, $65,000, and $35,000. None have sold. [Wife] and Alexandra (who owns 17 horses located on the farm) are working to find placement for the horses in anticipation of their having to vacate the farm." Wife requested that she be awarded, among other assets, the real property in Los Banos as well as the "horse breeding business and the horses and all liabilities related to the business at zero value."

The parties reached a settlement on June 26, 2017 and memorialized their agreement in a recorded, sworn stipulation. As part of that stipulation, husband agreed that wife would receive, among other property, "the Los Banos farm, [and] the horses . . . as her sole and separate property." Husband further agreed that the court's "jurisdiction

---

[2] Seventeen of these horses were owned by Alexandra, husband and wife's adult daughter. Wife gave estimates of the value of some of Alexandra's horses as well as her own.

4

to award spousal support to either party is terminated effective upon payment of all the sums that are due to [him]."

When wife's counsel asked if husband was "willing to accept . . . [wife]'s preliminary declaration of disclosure and waive the final declaration," he responded that he did not "understand what that means." After conferring with his counsel off the record, husband acknowledged that he was "willing to give up [his] right to have [wife] prepare a final [d]eclaration of [d]isclosure in which she will disclose to [him] all of her assets, debts, income and expenses." Husband's counsel had wife confirm on the record that the information she provided on her income and expense declaration and her schedule of assets and debts was true and correct to the best of her knowledge and that she had produced every document she believed was relevant to the issue of community property or separate property. Husband then agreed that he would accept wife's interrogatories' responses, her schedule of assets and debts, and her income and expense declaration.

The parties subsequently prepared and executed the MSA. Pursuant to the MSA, husband was to receive: (1) $275,000 transferred from wife's personal IRA to husband's IRA; (2) "a lump sum payment of $250,000 . . . upon the closing of the sale of the Los Banos ranch or by June 26, 2018, whichever should happen first"; (3) "gas and electrical welding equipment, three large Craftsman tool chests and all of the tools therein, a lathe, and a mill"; and (4) his bicycle. Wife "*shall receive all other property*, *including*, but not limited to, all furniture, *the horses*, the Cotati residence, the Virginia property, the remaining proceeds from the Los Banos farm after the $250,000 payment is made to Husband, the joint Charles Schwab account and all other community property not outlined by this agreement." (Italics added.)

The MSA also expressly provided that the court "shall retain jurisdiction (except as otherwise provided in this Agreement) to make orders and determinations that are necessary and/or appropriate (1) to enforce any of the terms of this Agreement or

5

otherwise effectuate the division of property as specified in this Agreement; (2) to resolve any matter subject to the jurisdiction of the court that has not otherwise been resolved by the terms of this Agreement, or to resolve any dispute that may arise concerning the terms of the Agreement; and (3) to resolve claims regarding omitted or undisclosed property and obligations."

The court entered the judgment of dissolution, which incorporated the MSA by reference, on August 11, 2017.

### D. Husband's Postjudgment RFO

On March 28, 2018, husband filed an RFO seeking the following: (1) change of venue; (2) "[d]ivision of undivided and undisclosed assets"; (3) a finding that wife breached her fiduciary duty by "fail[ing] to disclose assets"; and (4) attorney fees and costs. In his supporting declaration, husband stated on information and belief "that there are significant assets that were not disclosed during the dissolution and/or have been hidden through creative accounting" and that he would need to conduct additional discovery to determine "the extent of the assets." According to husband, "[wife] testified to the values of specific assets, such as the horses. I am informed and believe that she is now selling those assets for significantly more money than she valued them at during the dissolution proceedings." In connection with the RFO, husband propounded discovery on wife, including a request for admissions, form interrogatories and a request for production of documents.

In response, wife sought dismissal of husband's RFO[3] and payment of her attorney fees and costs for opposing the RFO under Code of Civil Procedure section 128.7. Wife alleged that husband's RFO was brought for an improper purpose, namely in retaliation

---

[3] The trial court stayed discovery pending resolution of wife's request to dismiss husband's RFO.

6

for her seeking recoupment of a federal tax refund which had been credited to husband[4] as well as her obtaining a restraining order against him.

## E. *The Trial Court's Decision*

Following a hearing, the trial court dismissed husband's RFO with prejudice, denied his motion to change venue, granted wife's request for a protective order barring further discovery, and imposed $4,500 in sanctions on husband "under [Family Code section] 271." In its statement of decision, the court found that husband's "discovery requests are a fishing expedition in an attempt to reopen a case." The court rejected husband's claim that wife had failed to disclose assets, noting that husband entered into the MSA four months after wife's deposition and, in so doing, husband acknowledged: (1) he "[was] informed of all the facts surrounding the agreement"; (2) "[his] decision to execute the MSA was free of fraud, coercion, or undue influence"; (3) "both [parties] complied with all the disclosure requirements under the Family Code"; and (4) "[b]oth parties waived any further and final disclosures."

In the minute order, the court also expressly found that husband's claims of "undisclosed assets" "are based on value [*sic*] of the horses. The existence and acquisition of the horses was known and discussed in [wife's] deposition 4 months before the Judgment was entered. [Husband] was free to obtain whatever valuation he wanted as to the horse operation at any time as this was an issue since the beginning of the case."

Husband timely appealed.

---

[4] In February 2018, wife filed an RFO seeking recovery of a refund for tax year 2015 that the Internal Revenue Service (IRS) credited entirely to husband. Following a hearing, the trial court ruled that this refund was to be divided equally between husband and wife and the parties were to cooperate in ensuring that the IRS recognized the amount due to each of them.

## II. DISCUSSION

### A. Dismissal of the RFO

Husband argues the trial court was obligated by the terms of the MSA to resolve the parties' dispute over the division of assets and therefore lacked discretion not to hear his RFO. We disagree because husband did not raise a dispute over "omitted or undisclosed" property as required in the MSA.

#### 1. Legal Principles Governing Interpretation of MSAs

"Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally." (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439.) "When, as here, no conflicting extrinsic evidence is offered of an interpretation as to which the language of a marital settlement agreement is reasonably susceptible, and the facts are otherwise undisputed, we apply the unambiguous contract terms to the undisputed facts as a matter of law." (*Ibid.*)

#### 2. Husband's RFO Did Not Trigger the Court's Jurisdiction Under the MSA

Husband's RFO sought to invoke the trial court's jurisdiction under the MSA "to resolve claims regarding *omitted* or *undisclosed* property and obligations." (Italics added.) In support of his claim, husband submitted two pieces of evidence: (1) excerpts from wife's deposition testimony, in which she asserted that eight of the 34 horses owned by herself or their daughter had a value of $5; and (2) two Facebook posts advertising horses for sale from wife's horse farm.[5]

The problem with husband's argument is that he cannot credibly suggest that wife's horses fall within the definition of "undisclosed" assets. Husband has always

---

[5] The first of these posts advertises one horse, named Remington, for sale with a price of $10,000. The second post advises that there are "a number of horses for sale" from the farm, listing five of them by name, specifically Remington (again), Diva, Razz, Kitty, and Kara. However, this second post does not include prices for *any* of the horses.

known of their existence. In his petition for dissolution, for example, husband lists the horse farm as one of wife's assets and notes that there are "approx[imately] 35 horses maintained" on that farm.

The issue is thus not one of nondisclosure. Rather, husband is complaining that wife (deliberately) undervalued the horses. However, the MSA only confers jurisdiction on the court to resolve claims of "omitted or undisclosed assets"; it does not confer jurisdiction on the court to resolve claims of disclosed, but possibly undervalued, assets. For that reason alone, husband's RFO did not trigger the trial court's jurisdiction.

However, even if the MSA *could* be construed to cover claims of undervaluation, husband's evidence in support of the RFO does not show that any such undervaluation occurred. At her February 2017 deposition, wife made clear that *some* of the horses on the farm were, in her opinion, worth very little and *some* of the horses were worth quite a lot. In his petition for dissolution, husband expressly stated his own opinion that "[s]ome of [wife's] horse[s] are worth $100,000 each." If husband was dissatisfied with wife's valuations, nothing prevented him from seeking more specific discovery responses, or seeking the assistance of a third party to assess the horses' values. All of this could have been done prior to his entering into the MSA in which he agreed that *all* the horses were wife's separate property.

## B. Jurisdiction Over Marriages of Long Duration

Citing section 4336, husband next argues that because his marriage to wife was one of long duration, i.e., more than 10 years, the trial court committed legal error by refusing to exercise continuing jurisdiction over the division of assets. We disagree.

### 1. Legal Principles Governing Spousal Support in Marriages of Long Duration

Section 4336, subdivision (a) provides, in pertinent part: "Except on written agreement of the parties to the contrary or a court order terminating *spousal support*, the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage . . . where the marriage is of long duration." (Italics added.)

9

### 2. *Section 4336 Applies to Claims for Spousal Support, not Division of Property*

There is no dispute that husband and wife's marriage was one of long duration. Even so, the trial court was not bound by section 4336—which confers indefinite jurisdiction over spousal support in some circumstances—to exercise jurisdiction over property division claims. Section 4336 is found within division 9, part 3 of the Family Code, entitled "Spousal Support," and by its express terms only confers jurisdiction over spousal support issues, *not* the division of property. Accordingly, the trial court was not obligated by section 4336 to hear husband's RFO seeking to relitigate the value of certain property, the division of which was already resolved by the MSA.

### C. *The Protective Order Regarding Discovery*

Husband next argues the trial court abused its discretion by entering a protective order in favor of wife because section 218 automatically reopens discovery upon filing an RFO. Again, we disagree.

### 1. *Legal Principles Governing Postjudgment Discovery*

Section 218 provides: "With respect to the ability to conduct formal discovery in family law proceedings, when a request for order or other motion is filed and served after entry of judgment, discovery shall automatically reopen as to the issues raised in the postjudgment pleadings currently before the court." The rules for civil discovery apply to family law cases "[a]lthough some informality and flexibility have been accepted in" these proceedings. (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1354; accord, § 210; *In re Marriage of Boblitt* (2014) 223 Cal.App.4th 1004, 1022.)

Under the Civil Discovery Act, "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc., § 2017.010.) The responding party, however, is entitled to seek a protective order from the court limiting discovery on the grounds that it

is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive" (Code Civ. Proc., § 2019.030, subd. (a)(1)); or that "[t]he selected method of discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, and the importance of the issues at stake in the litigation." (*Id.*, subd. (a)(2).)

We review a court order limiting discovery for abuse of discretion. (*In re Marriage of Hixson* (2003) 111 Cal.App.4th 1116, 1123 (*Hixson*).)

### 2. *Husband Was Not Entitled to Further Discovery Based on His RFO*

Husband is correct that, pursuant to section 218, discovery was "automatically reopen[ed]" in this case upon his filing the RFO. However, that statute does not forbid wife from seeking a protective order under Code of Civil Procedure section 2019.030, subdivision (b) in response. Section 218 also does not strip the trial court of its discretion to limit the scope of discovery or, where appropriate, preclude further discovery altogether. (See Code Civ. Proc., § 2019.030; *Hixson*, *supra*, 111 Cal.App.4th at pp. 1122-1123.)

As discussed above, the trial court properly concluded that husband's RFO did not trigger its jurisdiction under the MSA since it did not seek a resolution of a claim to omitted or undisclosed assets. Rather, husband was seeking to readjudicate the value of specific assets he has always known about and, more importantly, had every opportunity to challenge before executing the MSA. Under the circumstances, there was no basis for permitting further discovery relating to the valuation of the horses and the trial court did not abuse its discretion in granting wife's motion for a protective order.

### D. *Sanctions Under Section 271*

Husband claims that the trial court lacked jurisdiction to order that he pay $4,500 in sanctions to wife pursuant to section 271 as there was no notice or opportunity to be heard as that statute expressly requires. We agree.

11

### 1. *Legal Principles Governing Section 271*

Section 271 authorizes a trial court to award attorney fees and costs based on "the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction." (§ 271, subd. (a).) "Due process requires a party be given notice and an opportunity to be heard before a court imposes sanctions under section 271. [Citations.] In addition, the notice provided *must specify the authority relied upon* and must advise of the specific grounds and conduct on which sanctions are to be based." (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178, italics added.)

"A sanctions order under section 271 is reviewed for abuse of discretion. [Citation.] Accordingly, we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order. [Citations.] 'We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review.' " (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225-1226.)

### 2. *The Trial Court Abused Its Discretion by Imposing Section 271 Sanctions*

The record supports husband's contention that he lacked both notice and an opportunity to be heard on the issue of sanctions under section 271. Wife did not cite section 271 in any of the pleadings she filed in connection with husband's RFO.

Although wife did request sanctions in connection with husband's RFO, her request was made pursuant to Code of Civil Procedure section 128.7, not section 271. The trial court, however, did not cite Code of Civil Procedure section 128.7 in either its oral pronouncement or the statement of decision. Rather, it simply announced that it was

12

imposing $4,500 in sanctions against husband pursuant to section 271. This pronouncement does not meet the notice requirements of section 271.[6]

We conclude the trial court abused its discretion by imposing sanctions under section 271 and will modify that portion of the order accordingly, without prejudice to the trial court issuing a new award after proper notice and hearing, if appropriate.

### E. Change of Venue

Finally, husband argues that the trial court, as a matter of law, was required to grant his change of venue motion and when this court reverses, it should remand the matter directly to the Santa Clara County Superior Court for further proceedings.

### 1. Legal Principles Governing Motions for Change of Venue

Code of Civil Procedure section 397.5 provides: "In any proceeding for dissolution or nullity of marriage or legal separation of the parties under the Family Code, where it appears that both petitioner and respondent have moved from the county rendering the order, the court may, when the ends of justice and the convenience of the parties would be promoted by the change, order that the proceedings be transferred to the county of residence of either party."

The standard of review for an order granting or denying a motion to change venue is abuse of discretion. (*Fontaine v. Superior Court* (2009) 175 Cal.App.4th 830, 836.) "A trial court abuses its discretion when venue is mandatory in a county other than the county where the action has been brought." (*State Bd. of Equalization v. Superior Court* (2006) 138 Cal.App.4th 951, 954.)

---

[6] "[F]undamental principles of due process . . . call for those with an interest in the matter to have notice and the opportunity to be heard, so that the ensuing order does not issue like a 'bolt from the blue out of the trial judge's chambers.' " (*Monarch Healthcare v. Superior Court* (2000) 78 Cal.App.4th 1282, 1286.)

### 2. *The Trial Court Did Not Err in Denying Husband's Motion to Change Venue*

As we have discussed at length above, the trial court did not err in dismissing husband's RFO or granting wife's motion for a protective order barring further discovery. Having determined there was no basis for it to reopen matters which had been foreclosed by the judgment and MSA, the trial court impliedly found that changing venue would not promote "the ends of justice and the convenience of the parties." (Code Civ. Proc., § 397.5.) The change of venue statute is permissive, not mandatory, and based on this record, it is clear the trial court did not abuse its discretion when it denied husband's motion.

### III.   DISPOSITION

The order is modified to strike the award of Family Code section 271 attorney fees and costs as a sanction without prejudice to further properly noticed proceedings in the trial court. We affirm the order as modified. Wife shall recover her costs on appeal.

_____
Greenwood, P.J.

WE CONCUR:


_____
Grover, J.


_____
Danner, J.

Orr v. Traina
No. H046090